**Danny Ray WOOD, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 03A04–8808–CR–262.

Court of Appeals of Indiana, Fourth District.

March 16, 1989.

---

J.J. Paul, III, Ober, Symmes, Cardwell, Voyles & Zahn, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Wendy Stone Messer, Deputy Atty. Gen., Indianapolis, for appellee.

CONOVER, Presiding Judge.

Defendant–Appellant Danny Ray Wood (Wood) appeals his conviction for two counts of child molesting.

We reverse.

Because we reverse, we address only the issue of whether the trial court, based on the rape shield statute, properly excluded exhibits and testimony indicating someone other than Wood committed the molestations.

In April, 1987, C.B., an eight year old female, informed her grandmother Wood had been "messing with her." Wood, the boyfriend of C.B.'s mother, frequently resided with the family. Upon questioning by family members, caseworkers for the Welfare Department, and a police officer, C.B. indicated Wood frequently rubbed his fingers on her "straddle" (i.e. vaginal area) and breasts and rubbed his penis on various parts of her body. C.B. defined the events in terms of houses where the family had lived rather than dates. Eventually, C.B. and the police officer arrived at Christmas Eve 1985 and April 1986 as dates of molestation.

Wood was charged by information with two counts of child molesting, both class C felonies. After a jury trial, Wood was convicted of both counts and sentenced to consecutive terms of eight years with four of the eight years suspended on count two. He now appeals.

Further facts as necessary appear below.

IND.CODE 35–37–4–4, the Indiana rape shield statute, provides:

Sec. 4. (a) In a prosecution for a sex crime as defined in IC 35–42–4:

(1) evidence of the victim's past sexual conduct;

(2) evidence of the past sexual conduct of a witness other than the accused;

(3) opinion evidence of the victim's past sexual conduct;

(4) opinion evidence of the past sexual conduct of a witness other than the accused;

(5) reputation evidence of the victim's past sexual conduct; and

(6) reputation evidence of the past sexual conduct of a witness other than the accused;

may not be admitted, nor may reference be made to this evidence in the presence of the jury, except as provided in this chapter.

(b) Notwithstanding subsection (a), evidence: ...

(2) which in a specific instance of sexual activity shows that some person other than the defendant committed the act upon which the prosecution is founded; ...

may be introduced if the judge finds, under the procedure provided in subsection (c) of this section, that it is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

(c) If the defendant or the state proposes to offer evidence described in subsection (b) of this section, the following procedure must be followed:

(1) The defendant or the state shall file a written motion not less than ten (10) days before trial stating that it has an offer of proof concerning evidence described in subsection (b) and its relevancy to the case. This motion shall be accompanied by an affidavit in which the offer of proof is stated.

(2) If the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, and at the hearing allow the questioning of the victim or witness regarding the offer of proof made by the defendant or the state.

At the conclusion of the hearing, if the court finds that evidence proposed to be

offered by the defendant or the state regarding the sexual conduct of the victim or witness is admissible under subsection (b) of this section, the court shall make an order stating what evidence may be introduced by the defendant or the state and the nature of the questions to be permitted. The defendant or the state may then offer evidence under the order of the court.

On January 26, 1987, Wood filed a motion for a pre-trial ruling as to the admissibility of evidence otherwise excluded by the rape shield statute and for a hearing thereon. At the hearing, which took place on January 30, 1987, the trial judge took the issue under advisement. Thereafter, the State filed a motion *in limine*, which was granted by the trial court pursuant to I.C. 35–37–4–4. The order *in limine* barred evidence of C.B.'s past sexual conduct, evidence of the past sexual conduct of a witness other than the accused, and any opinion or reputation evidence regarding the above witnesses. Trial commenced on February 10, 1987.[1]

Several times throughout the trial Wood attempted to elicit testimony and present exhibits indicating someone else committed the molestations. However, the trial court refused to admit the evidence based on its order *in limine*. Wood now contends the trial court misapplied the rape shield statute through its order *in limine*, thereby denying him the opportunity to effectively cross-examine witnesses and present his defense.

Wood points to several specific occurrences at trial. For example, at one point, Helen Jackson, a welfare caseworker, was questioned by the State on direct examination regarding telephone conversations with Darlene, C.B.'s mother. The following colloquy took place:

Q. What were [*sic*] the nature of those calls?

A. she stated that she felt that [C.B.] had gotten her Danny's [*sic*] confused, and she described an incident that her brother may ·have done something to [C.B.] also, and I referred her to speak

with Steve Moore down at the Sheriff's Department.

(R. 890–91). The prosecutor then requested an admonishment to the jury to disregard the testimony, which the trial court granted. Wood objected to the admonishment on the basis it prevented his cross-examination of the witness on the subject matter. He makes the same argument here, particularly noting the subject area related to two other men believed to have molested C.B.

Next, during cross-examination, Wood questioned Stella Cash (Cash), C.B.'s grandmother, regarding a statement Cash made to her son and daughter-in-law indicating C.B. had been molested at her natural father's house. The daughter-in-law subsequently related the story to a welfare caseworker, who noted the conversation in the welfare log. When questioned, Cash denied any such statement. Upon further questioning, the State objected based on the order *in limine* and the trial court sustained the objection. Wood was prevented from further questioning Cash regarding her prior inconsistent statement.

In Wood's cross-examination of Peggy Dunlevy (Dunlevy), a welfare caseworker, the trial court excluded five exhibits and twice prohibited Wood from cross-examining her on certain subjects. The exhibits entailed entries made in the welfare log regarding other possible molesters and linked some of the incidents to the dates specified in the charges against Wood. Each time the State's objection based on the order *in limine* was sustained by the trial court. Exhibit I involved the statement made by Cash to her daughter-in-law. The entry indicates Cash told her son and daughter-in-law C.B. was molested by Danny Brown while staying at her natural father's. Wood was also prohibited from placing exhibit G into evidence, which was an entry stating "a Danny Brown molested [C.B.] when she was with her father in Foster's Trailer Court in Dec. 1985." Wood was further prevented from asking Dunlevy whether her entry referred to the

---

1. We note Wood complied with the procedure set forth in IND.CODE 35–37–4–4(c).

time frame involving December 1985. Wood contends these entries indicate another Danny, Danny Brown, molested C.B. in December 1985 and he was prevented from cross-examining Dunlevy on the issue and submitting pertinent evidence to the jury.

Additional welfare log entries, exhibits F–1, H and J, were also excluded. Exhibit F–1 noted Darlene's strong belief Wood was innocent. Exhibit H indicated Wood had told C.B. "all you have to do is say I didn't do it, Danny Brown did." Exhibit J noted the need to "find out about Danny Brown molestation." Further, during direct examination the trial court permitted the State to question Dunlevy regarding an attempt by Darlene to persuade C.B. to accuse someone else. On cross-examination, Wood was prevented from asking if Darlene had mentioned any specific names.

Additionally, Exhibit J noted, "Darlene alleged [C.B.] has said John Cash, her uncle, molested her." C.B. indicated in her statements Wood molested her when she lived on a street named Pleasant Grove. Darlene testified Wood did not reside with the family nor stay overnight when they lived on Pleasant Grove. However, she testified Cash did spend the night at the house and, in fact, slept in the same bed with C.B. C.B. also claimed Wood molested her when she lived on Hutchins Street. Darlene testified Cash also spent the night on Hutchins Street with the same sleeping arrangements. She further testified Wood and Cash argued when they lived on Hutchins Street because Wood found Cash on a bed with C.B.

Finally, the defense attempted to place into evidence a certified transcript of the rape shield hearing as evidence C.B. claimed another perpetrator molested her and to show inconsistencies in her various statements. The trial court denied admission of the transcript.

We first note the policy of the rape shield statute is to shield the victims of sex crimes from a general inquiry into their past sexual conduct and to keep the victims from feeling they are on trial. *Kelly v. State* (1983), Ind., 452 N.E.2d 907, 910. On

this basis, our courts have approved the exclusion of evidence of prior molestation by a different person under the rape shield statute. *Baughman v. State* (1988), Ind., 528 N.E.2d 78, 79; *Parrish v. State* (1987), Ind., 515 N.E.2d 516, 520.

■ While the rape shield statute does prohibit inquiry into a victim's past sexual conduct, the statute contains three exceptions. One such exception is evidence of a "specific instance of sexual activity [which] shows that some person other than the defendant committed the act upon which the prosecution is founded." I.C. 35–37–4–4(b)(2). However, such evidence may be introduced only if the judge finds:

1. it is material to a fact at issue, and
2. its inflammatory or prejudicial nature does not outweigh its probative value.

This determination is within the trial court's discretion. *Thomas v. State* (1984), Ind., 471 N.E.2d 677, 679.

■ Wood contends the trial court misapplied the rape shield statute by excluding all inquiry into C.B.'s past sexual conduct, including those instances of molestations by other perpetrators on or near the dates specified in the charges against him. He maintains such evidence is covered by the exception in the statute. He therefore claims he was denied the opportunity to effectively cross-examine and present his defense.

Our courts have consistently held Indiana's rape shield statute does not violate a defendant's Sixth Amendment right to confrontation absent a showing of actual impingement on cross-examination. *Thomas, supra,* at 679; *Lagenour v. State* (1978), 268 Ind. 441, 376 N.E.2d 475. The standard set forth in *Lagenour* was whether the restriction prevented the defendant from conducting a "full, adequate, and effective cross-examination." *Id.*

Here, the evidence Wood sought to introduce fell squarely within the exception provided for in the statute. The evidence indicated another Danny, Danny Brown, committed the Christmas Eve 1985 molestation. It further indicated John Cash may have

committed the second molestation.[2] For these reasons, it is apparent the evidence was relevant to a fact at issue, namely, the guilt or innocence of Wood. *See Sizemore v. State* (1979), 272 Ind. 26, 395 N.E.2d 783, 785. It is equally apparent the probative value of the evidence outweighed any prejudicial impact it may have had. By preventing the admission of evidence, Wood was prevented from fully, adequately, and effectively cross-examining several witnesses regarding a material fact in issue, thus creating an actual impingement on his right of confrontation. While we readily acknowledge the policy of protecting a sex crime complainant, this policy, under the facts of this case, must be subordinated to the defendant's constitutional rights. The trial court abused its discretion by excluding the evidence.

Reversed and remanded for a new trial.

CHEZEM and NEAL, JJ., concur.

**2.** While there is no evidence linking John Cash specifically to an incident in April, 1986, after reviewing the entire record it is undeterminable whether the last incident occurred in that month. The April 1986 date was chosen after a videotaped interview with C.B. in which she claimed the last molestation took place in April 1986. She claimed Wood molested her every day from April 1, 1986, to April 12, 1986. Later, during direct examination at trial, she denied specifying the April 1986 dates and, in fact, claimed she never remembered the exact dates on which any of the molestations occurred. Additionally, during the rape shield hearing she maintained the last molestation took place on Christmas, 1985. Through all of her testimony C.B. was confused regarding days, months, and years. Based on portions of her testimony, it is conceivable John Cash stayed overnight during the last occurrence. Additionally, the jury was instructed a lack of specificity regarding the dates was not a basis for acquittal so long as the dates occurred within the statute of limitations. Consequently, the jury could have convicted Wood on the belief he molested C.B., whether or not he committed the act in April 1986.

Because the date of the last molestation is questionable at best and John Cash can be linked to various times and residences prior to April, 1986, testimony regarding his molestation of C.B. was relevant and should have been admitted under the statute's exception.