**Gene SAYLOR, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 67A01–9002–CR–48.**

Court of Appeals of Indiana, First District.

Sept. 6, 1990.

Susan K. Carpenter, Public Defender, M.E. Tuke, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Saylor appeals his convictions of two counts of child molesting, class C and D felonies. We reverse.

The issue we consider is whether use of Indiana's Rape Shield Statute to bar evidence of an earlier child molestation violated appellant Saylor's Sixth Amendment rights of confrontation and compulsory process or resulted in a denial of due process of law.

The State alleged that Saylor fondled his mildly mentally handicapped stepdaughter and engaged in sexual intercourse with her on multiple occasions over the course of about a year. The State's evidence established that Saylor accomplished the acts under the guise of "doctoring." He would check the victim, D.R., for lumps by massaging her breasts, examine her genitalia for chapping and infection, and palpate her vagina for toilet paper, then engage in acts of sexual intercourse with her.

The State offered the victim's testimony in support of the allegations along with the testimony of a school counselor to whom D.R. reported the incidents, a counselor specializing in the therapy of sexual abuse among mentally handicapped children, who was treating D.R., the pediatrician who examined D.R. for physical corroboration of sexual assault, and the investigating police officer. In addition, the State offered the testimony of M.B., age 23 at the time of trial, who reported that fourteen years earlier, when she was nine years old, and her mother was dating Saylor's twin brother, Saylor awakened her by placing his hands under her clothing and touching her breasts and genitals.

Saylor admitted touching the victim and examining her as often as every other day; however, he denied that the alleged acts of sexual intercourse occurred or that he touched the victim with the intent to gratify sexual desires. Instead, he maintained that the victim, who functioned at a mental and social age of 8–9 years, had either created the allegations in an effort to convince her mother to return to Kentucky where the family lived before meeting Saylor, or that the victim had in fact experienced the acts of intercourse as she alleged but because of an inability to fully comprehend time, had substituted Saylor as the perpetrator of the acts of sexual intercourse which occurred earlier in her life.

In support of the latter defense, Saylor attempted to show that his stepdaughter had been the victim of a sexual assault in 1980, two years before either the victim or her mother met him. Had Saylor not been prevented from offering this evidence, Saylor would have proved that D.R. reported a sexual molestation to the Lexington, Kentucky, police and later that year, when D.R. was hospitalized for an unrelated matter, her physicians discovered her enlarged vagina, questioned her mother about the matter and were told that D.R. had been sexually assaulted. The proffered evidence was excluded during an unrecorded bench conference held before cross-examination of Ann Newton, D.R.'s therapist, began, apparently on the basis of the Rape Shield Statute, Ind.Code 35–37–4–4, which prohibits admission of "evidence of the victim's past sexual conduct." [1]

■ Without a doubt, the strength of the State's case lies in the testimony of Ann Newton. On the face of the record, D.R.'s direct testimony appears to be consistent with what one might expect of an eight-year-old. Her responses to the State's leading questions are brief and in her own language. However, Newton's summation of the information conveyed to her by D.R. places the events in a purely sexual context and reflects her personal belief that D.R. was "naively" submitting to Saylor's so-called doctoring. Newton testified extensively about her perceptions of the truthfulness of D.R.'s allegations, why she believed the assertion that Saylor had engaged in sexual intercourse with D.R. and

the aspects of D.R.'s behavior which substantiated her claim.[2]

Hence, to show that D.R.'s version of the facts was not worthy of belief, Saylor needed to attack both D.R.'s account and Ann Newton's professional belief in the account. Saylor succeeded in proving that one of D.R.'s particular learning deficiencies was with time. Newton testified that D.R. did not seem to have a very good concept of time at all and that D.R. was "sort of lost in time." But without the critical information that D.R. had been molested when she was about nine, Saylor's questions concerning D.R.'s special mental handicap appeared to be connected solely to D.R.'s inability to state with certainty when the events occurred; they shed no light on the *selective* reliability of D.R.'s statements with respect to the identity of her abuser, creating the very real risk that the jury, like Ann Newton, would rely upon partial corroboration to mistakenly infer the trustworthiness of the entire statement. *Compare Idaho v. Wright* (1990), —— U.S. ——, 110 S.Ct. 3139, 111 L.Ed.2d 638.

In addition, Saylor was prevented from countering the medical evidence that D.R.'s physical condition was consistent with past vaginal penetration, testimony which appeared to corroborate her claim that sexual intercourse occurred with Saylor. Again, Saylor succeeded only in alerting the jury to the possibility that penetration occurred at some other time, not that it in fact had occurred earlier in the victim's life.

Hence, the trial court's ruling had a threefold effect upon Saylor's defense: it

---

**1.** On at least three occasions, the Indiana Supreme Court has held evidence that the victim had been molested previously was properly excluded pursuant to the Rape Shield Statute. *Beckham v. State* (1988), Ind., 531 N.E.2d 475; *Baughman v. State* (1988), Ind., 528 N.E.2d 78; *Parrish v. State* (1987), Ind., 515 N.E.2d 516. Saylor does not argue that the evidence he proffered falls under any of the exceptions contained in I.C. 35–37–4–4(b).

**2.** As a general rule, adult witnesses may state an opinion as to the child's general competence and ability to understand the subject but are prohibited from making direct assertions as to their belief in the child's testimony, as such vouching invades the province of the jury to

determine the weight to be placed upon the child's testimony. *Head v. State* (1988), Ind., 519 N.E.2d 151. Thus, in *Stewart v. State* (1990), Ind., 555 N.E.2d 121, the Indiana Supreme Court reversed convictions of criminal confinement and criminal deviate conduct, where the trial court permitted a psychologist to opine that she felt the testimony of the mentally handicapped witness could be considered trustworthy and to expound upon the reasons for believing the witness' story. In the present case, Ann Newton opined, without objection from the defense, that D.R. did not have sufficient mental sophistication to create a story of sexual molestation and that she felt D.R. was telling her what actually happened.

precluded Saylor from casting doubt through cross-examination upon the reliability of both the victim's testimony and the bolstering testimony of Ann Newton that D.R. appeared to have experienced the events she described; and, it prevented Saylor from explaining the corroborating evidence of molestation offered by D.R.'s pediatrician.

■ The right of an accused in a criminal trial to due process is, in the plainest terms, the right to a fair opportunity to defend against the State's accusations. *Chambers v. Mississippi* (1973), 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297. At a minimum, it includes the opportunity to examine the prosecution's witnesses for purposes of challenging their testimony as well as the right to put before a jury evidence that might influence the determination of guilt. *Washington v. Texas* (1967), 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019; *Pennsylvania v. Ritchie* (1987), 480 U.S. 39, 56, 107 S.Ct. 989, 999, 94 L.Ed.2d 40 (plurality opinion). The rights to confront and cross-examine witnesses and to present evidence on one's own behalf [3] are critical for ensuring the integrity of the factfinding process, *Chambers*, 410 U.S. at 296, 93 S.Ct. at 1046, and essential to a fair trial. *Washington*, 388 U.S. at 19, 87 S.Ct. at 1923. Even so, these protections are not absolute; they may in appropriate cases yield to other legitimate interests in the criminal trial process. *Chambers*, 410 U.S. at 296, 93 S.Ct. at 1046.

State imposed restrictions on the types of questions that defense counsel may ask during cross-examination and on the defense's ability to offer otherwise relevant and material evidence "may not be arbitrary or disproportionate to the purposes they are designed to serve." *Rock v. Arkansas* (1987), 483 U.S. 44, 56, 107 S.Ct. 2704, 2711, 97 L.Ed.2d 37. Just as the state may not apply a rule of competence to prevent a material defense witness from taking the stand, *Chambers*, 410 U.S. 284, 93 S.Ct. 1038, or a rule of evidence that

permits the witness to take the stand but arbitrarily excludes material portions of his testimony, *Rock*, 483 U.S. at 55, 107 S.Ct. at 2711, it may not apply a rule of confidentiality mechanistically to prohibit the defense from either offering its version of the facts or assuring through cross-examination that the trier of fact has a satisfactory basis for evaluating the truth of the witnesses' testimony. *Davis v. Alaska* (1974), 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347.

■ We are unable to ascertain from the record whether the trial court excluded the evidence of the earlier molestation per se on the basis of the Rape Shield Statute or determined that an exception applied and the potential harm to the victim outweighed the probative value of the evidence. Either route led to reversible error in this case. Indiana's Rape Shield Statute complies with the dictates of the Confrontation and Due Process Clauses only if it does not actually impinge upon cross-examination. *Lagenour v. State* (1978), 268 Ind. 441, 376 N.E.2d 475; *Thomas v. State* (1984), Ind., 471 N.E.2d 677. As we have indicated, the restriction on discussion of the prior molestation denied Saylor a "full and fair opportunity to probe and expose infirmities in the witnesses' testimony." *Delaware v. Fensterer* (1985), 474 U.S. 15, 23, 106 S.Ct. 292, 296, 88 L.Ed.2d 15.

Moreover, the proscribed evidence was vital to Saylor's defense. The State's case turned upon the jury's belief in D.R.'s assertions that Saylor's conduct knowingly went beyond fatherly care. D.R.'s mother testified in support of Saylor, himself at one time a special education student, expressing her trust in Saylor's knowledge and disclosing her own reluctance to deal with D.R.'s feminine hygiene problems. D.R.'s mother encouraged D.R. to take care of herself but D.R. refused to follow through even though she had been taught to care for herself and complained of irritation and soreness. D.R.'s mother observed Saylor touch D.R., and allowed Saylor to "treat" her in the same manner as her

---

**3.** The Compulsory Process Clause provides no greater protections in this area than those afforded by the Due Process Clause. *Ritchie*, 480 U.S. at 56, 107 S.Ct. at 1001.

daughter based upon the mistaken belief that it was proper.

We have no way of knowing how the jury assessed the evidence offered to show depraved sexual instinct, the only other evidence of identity which remains. Like the evidence offered from D.R., its probative value varies with the credibility of the witness. Had Saylor been permitted to cast doubt upon D.R.'s identification of him as the abuser, the jury's assessment of his credibility might have been sufficient to create a reasonable doubt.

The trial court deprived Saylor of due process of law by denying him the opportunity to effectively cross examine the State's witnesses and the right to present evidence in defense. Under the facts of this case, we cannot say that had the damaging potential of the excluded evidence been fully realized, the error would have been harmless beyond a reasonable doubt.

Judgment reversed.

HOFFMAN, P.J., concurs.

RATLIFF, C.J., dissents with separate opinion.

RATLIFF, Chief Judge, dissenting.

In my view, the trial court correctly disallowed evidence concerning a prior molestation of the victim some two years earlier in the State of Kentucky. The proferred evidence met none of the recognized exceptions to the Indiana Rape Shield statute.

Indiana's Rape Shield statute, IND. CODE § 35–37–4–4 provides, in part:

"(a) In a prosecution for a sex crime as defined in IC 35–42–4:

(1) evidence of the victim's past sexual conduct;

(2) evidence of the past sexual conduct of a witness other than the accused;

(3) opinion evidence of the victim's past sexual conduct;

(4) opinion evidence of the past sexual conduct of a witness other than the accused;

(5) reputation evidence of the victim's past sexual conduct; and

(6) reputation evidence of the past sexual conduct of a witness other than the accused;

may not be admitted, nor may reference be made to this evidence in the presence of the jury, except as provided in this chapter."

The purpose of Indiana's Rape Shield statute is to protect victims of sex crimes from a general inquiry into their sexual history, including any reference to the victim's entire prior sexual history. *Thomas v. State* (1984), Ind., 471 N.E.2d 681, 683; *Lewis v. State* (1982), Ind., 440 N.E.2d 1125, 1129, *cert. denied* (1983) 461 U.S. 915, 103 S.Ct. 1895, 77 L.Ed.2d 284; *Skaggs v. State* (1982), Ind.App., 438 N.E.2d 301, *trans. denied.* Evidence of the victim's prior sexual conduct is allowed by statute only in three cases:

"Notwithstanding subsection (a), evidence:

(1) of the victim's or a witness's past sexual conduct with the defendant;

(2) which in a specific instance of sexual activity shows that some person other than the defendant committed the act upon which the prosecution is founded; or

(3) that the victim's pregnancy at the time of trial was not caused by the defendant;

may be introduced if the judge finds, under the procedure provided in subsection (c) of this section, that it is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."

IC 35–37–4–4(b). In addition, our courts have created a fourth exception: evidence of false accusations of similar sexual misconduct may be admitted as evidence of the victim's credibility if the allegations are demonstrably false. *Little v. State* (1980), Ind.App., 413 N.E.2d 639, 643.

Indiana's Rape Shield statute repeatedly has been held not to violate a criminal defendant's sixth amendment right to confrontation, absent a showing of actual infringement on his right of cross-examination. *Woodford v. State* (1986), Ind., 488 N.E.2d 1121, 1126; *Thomas v. State* (1984),

Ind., 471 N.E.2d 677, 679. The trial court's exclusion of evidence must not prevent the defendant from conducting a full, adequate, and effective cross-examination. *Lagenour v. State* (1978), 268 Ind. 441, 444–45, 376 N.E.2d 475, 478.

Saylor cites *Wood v. State* (1989), Ind. App., 534 N.E.2d 1146, *trans. denied,* in support of his contention that he was denied the right to effective cross-examination. In *Wood,* the complaining witness appeared confused as to which "Danny" had molested her. The record indicated that the victim had implicated others for the same acts of molestation alleged against the appellant. At trial, the appellant attempted to enter evidence that someone other than himself had committed the acts of child molesting. The appellate court held that the trial court erred in applying the Rape Shield statute to exclude the exculpatory evidence because the evidence fell under exception (2): that some person other than the defendant committed the alleged crime. In addition, the other acts in *Wood* were close in time to those charged against him.

Saylor's reliance on *Wood* is misplaced. The evidence he offered to prove did not implicate someone else. The evidence does not fall under any other exception to the Indiana Rape Shield statute. No question of mistaken identity was presented. D.R. consistently and unequivocally named Saylor as the perpetrator of the acts of molestation. Nothing in the record suggests her accusations were demonstrably false. In fact, the evidence Saylor sought to present was precisely that which it is the purpose of the Rape Shield statute to prevent.

Neither was Saylor deprived of full, adequate, and effective cross-examination. His counsel skillfully cross-examined D.R. as to her confusion about dates and times, and her prior statements. Further, evidence of her mental handicap was revealed to the jury. Also, counsel repeatedly presented evidence that D.R. was unhappy living in Indiana with her mother and Saylor and wanted to return to Kentucky, thereby raising the inference that such might have been the motivation for her accusations. The issue of D.R.'s credibility was fully explored and placed before the jury. The trial court's correct ruling based upon the Rape Shield statute did not, in any way, deprive Saylor of a fair trial.

Further, the Rape Shield statute provides a specific procedure to be followed in the event a defendant or the state seeks to present evidence of other sexual activity of the victim of a sex offense.

"(c) If the defendant or the state proposes to offer evidence described in subsection (b) of this section, the following procedure must be followed:

(1) The defendant or the state shall file a written motion not less than ten [10] days before trial stating that it has an offer of proof concerning evidence described in subsection (b) and its relevancy to the case. This motion shall be accompanied by an affidavit in which the offer of proof is stated.

(2) If the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, and at the hearing allow the questioning of the victim or witness regarding the offer of proof made by the defendant or the state.

At the conclusion of the hearing, if the court finds that evidence proposed to be offered by the defendant or the state regarding the sexual conduct of the victim or witness is admissible under subsection (b) of this section, the court shall make an order stating what evidence may be introduced by the defendant or the state and the nature of the questions to be permitted. The defendant or the state may then offer evidence under the order of the court.

(d) If new information is discovered within ten [10] days before trial or during the course of the trial that might make evidence described in subsection (b) of this [section] admissible, the judge shall order a hearing out of the presence of the jury to determine whether the proposed evidence is admissible under this chapter."

I.C. § 35–37–4–4.

The record does not disclose any attempt at compliance with the foregoing statutory

provisions by Saylor. Having failed to invoke the statutory procedures relative to the admission of such evidence, Saylor cannot complain of its exclusion.

For the reasons stated, I respectfully dissent.