Thomas **KIELBLOCK**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 29A02–9208–CR–392.

Court of Appeals of Indiana, Second District.

Jan. 18, 1994.

Rehearing Denied March 8, 1994.

Transfer Denied May 16, 1994.

Harry L. Sauce, Sandra M. Oakes, Harry L. Sauce and Associates, Noblesville, for appellant-defendant.

Pamela Carter, Atty. Gen., Suzann Weber Lupton, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

FRIEDLANDER, Judge.

Thomas Kielblock brings this appeal challenging his conviction for child molesting as a class B felony.[1] We affirm.

The events which form the basis of the charge against Kielblock occurred while T.A., a five-year old child, lived with her aunt, Cindy Dunham, in Clinton County during the week. On weekends, T.A. lived with her mother, Bonnie, and Bonnie's live-in boyfriend, Kielblock, in Hamilton County.

Over Thanksgiving weekend in 1990, T.A. was in one of the bathrooms in her mother and Kielblock's apartment when Kielblock entered the room, closed the door behind him, took his pajamas off, sat down on the toilet, and took off T.A.'s leotards. T.A. pulled down her panties. After Kielblock had T.A. come close to him, he picked her up, sat her on his lap and inserted his penis inside her vagina.

In early December of 1990, T.A.'s kindergarten teacher sent a paper home from school explaining that, during the previous week, T.A.'s class had viewed a film about "good touches and bad touches." *Record* at 519. Dunham discussed the movie with T.A. and reminded T.A. not to let anyone touch her in a bad way. Knowing that Kielblock had previously been charged with "something similar," Dunham specifically instructed T.A. not to let Kielblock touch her in a bad way. *Record* at 522. Following their discussion, T.A. told Dunham that Kielblock had already "touched [her] in bad ways." *Record* at 544. The next day, Dunham told T.A.'s teacher what had happened and an investigation ensued.

As a result of the investigation, the State filed an information charging Kielblock with child molesting as a class B felony. The State alleged that "on or between 11–20–90 and 11–25–90, [Kielblock] did perform sexual intercourse, to-wit: placing his penis in the vagina [of T.A.], a child who was then under the age of twelve (12) years. . . ." *Record* at

28. In April of 1992, a jury found Kielblock guilty as charged and, a year later, the trial court denied Kielblock's belated motion to correct errors.

Kielblock now appeals, raising the following restated issues for our review:

(1) Did the trial court err by admitting evidence both of Kielblock's alleged sexual misconduct and of Kielblock's earlier conviction for child molestation?

(2) Did the trial court abuse its discretion by excluding evidence offered by Kielblock under an exception to the rape shield statute?

(3) Did the trial court err by allowing into evidence an audio tape (and a written transcript of the tape) of an interview with the victim?

(4) Is the evidence sufficient to sustain the jury's verdict?

I.

Relying on *Lannan v. State* (1992), Ind., 600 N.E.2d 1334, Kielblock seeks a new trial arguing that the trial court erred by admitting both T.A.'s testimony regarding previous alleged sexual misconduct by Kielblock and an abstract of judgment indicating Kielblock's earlier conviction for child molestation. We need not address this issue, however, because Kielblock failed to properly preserve the issue for review under *Lannan, supra.*

Only those cases pending on direct appeal where the issue has been properly preserved may be reviewed under *Lannan, supra. Pirnat v. State* (1993), Ind., 607 N.E.2d 973; *Clausen v. State* (1993), Ind., 622 N.E.2d 925. Where the defendant fails to properly preserve the issue, the admission of depraved sexual instinct evidence is not fundamental error. *Ried v. State* (1993), Ind., 615 N.E.2d 893. In order to have properly preserved the issue, the defendant must have presented the issue by objection at trial. *Id.* An issue is not preserved when an objection to evidence raised at trial differs from that which is presented on appeal. *See Chandler v. State* (1991), Ind., 581 N.E.2d

---

1. Ind.Code 35–42–4–3(a).

1233; *Coffee v. State* (1981), Ind., 426 N.E.2d 1318.

■ A review of the record before us indicates that, other than one objection claiming that the prosecutor was leading the witness, Kielblock made no objection to the evidence he now challenges. *Record* at 544–568, 547. Kielblock has failed to properly preserve this issue for review under *Lannan.*

## II.

We next address Kielblock's challenge to the trial court's exclusion of evidence offered by Kielblock under an exception to Indiana's rape shield statute.[2]

In a pre-trial hearing outside the presence of the jury, Kielblock made an offer to prove and presented the testimony of his brother, William, regarding an incident that William had allegedly witnessed involving T.A. and the defendant's son. William testified that, sometime between October of 1988 and April of 1989, he had been babysitting T.A., who was approximately four years old at the time, T.A.'s older brother, who was seven years old at the time, and the defendant's son, who was also seven years old at the time, at the defendant's residence in Elwood, Indiana. William testified that, while the three children thought they were alone, he witnessed the children commit a sexual act dissimilar to the act with which Kielblock had been charged.

The trial court ruled that this evidence should be excluded from trial because the conduct to which William had testified was protected by Indiana's rape shield statute. The court also ruled that the prejudicial impact of this evidence far outweighed any assistance the evidence might render to the jury. According to Kielblock, these rulings by the trial court constituted an abuse of discretion which precluded him from pursuing and casting doubt through cross-examination as to "the issues of credibility, mistake and knowledge of this very young victim." Reply Brief of Appellant at 8. Kielblock's argument lacks merit.

■ The policy of the rape shield statute is to shield the victims of sex crimes from a general inquiry into their past sexual conduct and to prevent the victims from feeling that they are on trial. *Wood v. State* (1989), Ind.App., 534 N.E.2d 1146. "On this basis, our courts have approved the exclusion of evidence of prior molestation by a different person under the rape shield statute." *Id.* at 1149. Three exceptions are contained within the statute, however. I.C. 35–37–4–4(b). One of these exceptions includes evidence of a "specific instance of sexual activity [which] shows that some person other than the defendant committed the act upon which the prosecution is founded." I.C. 35–37–4–4(b)(2). According to the statute, this evidence may be introduced at trial only if the judge finds that the evidence is material to a fact at issue in the case and that the inflammatory or prejudicial nature of the evidence does not outweigh its probative value. *Id.* Such a determination is within the trial court's discretion. *Thomas v. State* (1984), Ind., 471 N.E.2d 677.

■ Kielblock directs us to *Wood, supra,* where the trial court erred by excluding evidence which should have been admitted under this exception to the rape shield statute, and claims his case is virtually identical. We disagree.

In *Wood,* the defendant was convicted after a jury trial of child molestation. On appeal, the fourth district held that the trial court had misapplied the rape shield statute by excluding all inquiry into the victim's past sexual conduct, including those instances of molestation by other perpetrators on or near the dates specified in the charges against the defendant. The appellate court believed that the evidence the defendant sought to introduce fell squarely within the exception provided for in the statute. The reviewing court found that the evidence indicated that another person with the defendant's same first name had committed one of the charged molestations and that yet another individual named John may have committed the second. In a footnote, the court stated,

2. I.C. 35–37–4–4.

"Through all of her testimony [the victim] was confused regarding days, months, and years.... Because the date of the last molestation is questionable at best and [another man] can be linked to various times and residences prior to [the date charged], testimony regarding his molestation of [the victim] was relevant and should have been admitted under the statute's exception."

*Id.* at 1150, n. 2.

Contrary to Kielblock's assertions, *Wood* is quite different from the case before us. First, there was no evidence that T.A. was confusing her perpetrator. She consistently accused the defendant of molesting her and identified him in court as the perpetrator. Second, Kielblock's brother, William, allegedly witnessed a sexual act of a different nature than that with which Kielblock had been charged. Third, T.A. was very specific about where Kielblock had molested her—in one of the two bathrooms in her mother's apartment. The acts which William allegedly witnessed occurred in his brother's home in another town. Finally, the incident with which Kielblock had been charged occurred over the Thanksgiving weekend in 1990, long after the incident about which William proposed to testify.

Because this evidence was not of a specific instance of sexual activity which showed that some person other than Kielblock had committed the act upon which the prosecution was founded, because the evidence was not material to a fact at issue in the case and because the prejudicial nature of the evidence outweighs its probative value, the trial court did not abuse its discretion by excluding the evidence.

### III.

■ Kielblock next challenges the trial court's admission into evidence of an audio tape (and a written transcript of the tape) of an interview with T.A.

The record reveals that, during the trial and after T.A. had been excused from the witness stand, the State presented testimony by Sandra Lock, a child welfare worker. Lock testified that, during the investigation, she and T.A. discussed what had happened between T.A. and Kielblock. Lock further testified that she had recorded this conversation. As exhibits 2 and 2A, the State offered into evidence a transcript of this conversation, as well as the tape itself. In a hearing held outside the presence of the jury, Kielblock timely objected to the admission of the tape and transcript as inadmissible hearsay based upon *Modesitt v. State* (1991), Ind., 578 N.E.2d 649. First, Kielblock argued that the exhibits contained issues which the prosecutor had not dealt with on direct and that admission of the exhibits would preclude him from cross-examination on those issues. Second, Kielblock argued that the exhibits should be excluded from evidence because they were merely cumulative. The trial court overruled Kielblock's objection and admitted the two exhibits into evidence.

On appeal, Kielblock argues that the audio tape and transcript were offered for a single purpose, which was to bolster T.A.'s credibility by presenting a repetitive pattern of testimony. In addition, Kielblock contends that T.A. was unavailable for cross-examination when the tape and transcript were admitted into evidence. For these two reasons, argues Kielblock, we must reverse the judgment against him pursuant to *Modesitt, supra,* and *Moran v. State* (1992), Ind.App., 604 N.E.2d 1258, *trans. denied.* We disagree.

In 1991, our supreme court decided *Modesitt, supra,* which held that a prior statement is admissible as substantive evidence only if:

(1) the declarant:

(a) testifies at trial and

(b) *is subject to cross examination concerning the statement,* and

(2) the statement is:

(a) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition, or

(b) *consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive,* or

(c) one of identification of a person made after perceiving the person.

In 1992, this court decided *Moran, supra.* At Moran's bench trial, the court first permitted the State to introduce into evidence, over Moran's objection based on *Modesitt, supra,* a transcript and an audio recording of a statement that the complainant had given to a welfare caseworker. In addition, the court allowed into evidence, again over Moran's objection based on *Modesitt, supra,* the testimony of a therapist with whom the complainant had had prior conversations. All of this evidence came in after the complainant had testified during the State's case in chief and on rebuttal. Finally, the court also admitted, over Moran's proper objection, evidence of Moran's alleged prior sexual misconduct. *Moran, supra.*

On appeal, Moran argued that the complainant had been excused and was no longer available for cross-examination concerning the statements introduced by the supervisor and therapist. The record did not indicate whether the victim was available for recall. "[Moran] state[d] that for all intent and purposes she was no longer available and the State [did] not dispute this statement." *Moran* at 1261.

In reversing Moran's conviction, the reviewing court found that the complainant had been unavailable for cross-examination at the time the audio tape, transcript and testimony by the therapist had been admitted into evidence. The appellate court also determined that the the clear purpose of this hearsay evidence was to present a repetitive pattern of testimony (a drumbeat of repetition) to bolster the complainant's credibility. For these reasons, the appellate court held that, under *Modesitt, supra,* the trial court had erred by admitting this hearsay evidence. The reviewing court also held that, under *Lannan, supra,* the trial court had erred by admitting evidence of Moran's alleged past sexual misconduct.

In its conclusion the *Moran* court set out that portion of the trial court's judgment which stated,

"In regards to [the counts of which Moran was convicted], this Court does find the witness ... to be a credible witness and her testimony presents to the Court sufficient evidence *along with the other evidence in this cause* to convince the Court beyond a reasonable doubt that the defendant did commit the offense[] of Child Molesting...."

*Moran* at 1263. (Emphasis in appellate court's opinion.)

After reviewing the trial judge's own words, the *Moran* court determined that the judge had relied upon improperly admitted evidence, in addition to the uncorroborated testimony of the complainant, to convince him of the defendant's guilt beyond a reasonable doubt. Because the reviewing court could not say with confidence that the conviction had not been based upon the inadmissible evidence, the court reversed and ordered a new trial. *Moran, supra.*

Contrary to Kielblock's assertions, *Moran* is distinguishable from the case before us in several crucial respects. First, the trial court in Kielblock's case specifically found that the audio tape and transcript should be admitted as substantive evidence because the two items, which were consistent with T.A.'s testimony, were offered to rebut Kielblock's expressed or implied charge against T.A. of recent fabrication or improper influence or motive. Second, in Kielblock's case, the welfare worker did not repeat any of her and T.A.'s conversation about the molestation. Rather, she testified merely that she and T.A. had talked and that she had recorded that conversation. Third, in Kielblock's case, while the tape and transcript were admitted after the victim had testified during the State's case in chief, the record indicates that "[the victim] was still under subpoena and was subject to being called to testify. She was not in the courtroom due to a separation of witnesses, but the defendant never expressed a desire to call the witness." *Record* at 438.

Because T.A. was subject to cross-examination concerning her statement and because T.A.'s statement, which was consistent with her testimony, was offered to rebut Kielblock's implied charge of recent fabrication or improper influence or motive, the trial court did not err by admitting the audio tape and transcript into evidence.

## IV.

Finally, Kielblock contends that there is insufficient evidence to sustain the jury's verdict of guilty. Kielblock argues that the jury's verdict rested upon T.A.'s testimony, yet T.A.'s own mother testified that T.A. had a reputation for untruthfulness. Kielblock also argues that neither physical findings nor eyewitnesses corroborated T.A.'s story. Rather, Kielblock points out that his own testimony contradicted T.A.'s story. Finally, Kielblock notes that the examining physician's findings were inconclusive regarding whether or not T.A. had actually experienced sexual intercourse.

Our standard of review on this issue is well-settled. Our test for sufficiency of the evidence requires that we neither reweigh the evidence nor resolve questions of credibility. We look only to the evidence of probative value and the reasonable inferences to be drawn therefrom which support the verdict. *Jones v. State* (1992), Ind., 589 N.E.2d 241, 242.

Kielblock's argument here fails because it is simply an invitation for us to reweigh the evidence, and this we may not do.

Affirmed.

NAJAM and CHEZEM, JJ., concur.