## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 28 2018, 8:11 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven E. Ripstra
Ripstra Law Office
Jasper, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Roger Salinas,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 28, 2018

Court of Appeals Case No.
18A-CR-1331

Appeal from the Dubois Circuit
Court

The Honorable Nathan A.
Verkamp, Judge

Trial Court Cause No.
19C01-1607-F1-624

**Najam, Judge.**

# Statement of the Case

[1]    Roger Salinas appeals his convictions following a jury trial for four counts of rape, one as a Level 1 felony, one as a Level 3 felony, and two as Class B felonies; two counts of sexual misconduct with a minor, as Class B felonies; five counts of criminal confinement, one as a Level 3 felony, one as a Level 5 felony, one as a Level 6 felony, and two as Class D felonies; and battery, as a Class A misdemeanor.  Salinas presents three issues for our review:

1.    Whether the trial court abused its discretion and violated his right to cross-examine witnesses when it prohibited certain questions regarding his minor victim's prior sexual history under the Rape Shield Rule.

2.    Whether all but three of his convictions violate the prohibition against double jeopardy.

3.    Whether his sentence is inappropriate in light of the nature of the offenses and his character.

[2]    We affirm in part, reverse in part, and remand with instructions.

# Facts and Procedural History

[3]    Salinas married S.C. in approximately 2001.  S.C. had two young children from a prior relationship, including her daughter, S.M., who was born November 16, 1998.  After their marriage, Salinas and S.C. had two sons together.  When S.M. was fifteen years old, Salinas began touching S.M. in inappropriate ways, including touching her "butt."  Tr. Vol. II at 111.  And one day between March 1, 2014, and April 30, 2014, Salinas took S.M. out of school and drove her to

an apartment in Jasper. There, Salinas started "touching" S.M. and told her that "he wanted to be with [her]." *Id.* at 112. Salinas then "touched [S.M.'s] private area," told her to take her clothes off, took his clothes off, and told her to get on the floor. *Id.* at 113. Salinas got on top of her and "put his fingers" and then his penis into S.M.'s vagina. *Id.* He stopped after about fifteen or twenty minutes. Salinas went to the bathroom, and S.M. began crying. After S.M. got her clothes back on, Salinas took her back to school. During the same time period in the spring of 2014, also in the middle of a school day, Salinas raped S.M. a second time at the same apartment in Jasper.

[4] From October 1, 2014, through June 1, 2016, Salinas repeatedly forced S.M. into the basement of the family home and raped her. On several occasions, Salinas threatened S.M. with implements, including a hammer, a knife, and a bat. And Salinas once hit S.M. in her abdomen with the bat, and he sometimes hit and kicked S.M., leaving bruises. On June 2, 2016, Salinas threatened S.M. with a knife, hit her, and forced her to have intercourse.

[5] On June 14, Salinas forcibly "took S.M. out of the state because he wanted [her] to leave with him." *Id.* at 156. S.M. did not resist because Salinas had previously threatened to hurt her or her family if she did not do what he told her to do. Salinas started driving S.M. to Washington, but, after arguing with S.C. on the telephone, he returned S.M. home the next day. Upon their return, S.C. told Salinas to leave the family home, which he did. Soon thereafter, S.M. told S.C. about all of the sexual and physical abuse Salinas had inflicted on her over the years. Accordingly, S.C. contacted the Department of Child Services

to report the molestations, and, on June 18, S.M. underwent a sexual assault examination. That examination did not reveal any physical evidence of the alleged rapes or any sexual activity. But the nurse observed bruises on S.M.'s arm and leg. In July, S.M. discovered that she was pregnant, and she aborted the fetus. DNA analysis of the fetus' remains revealed that Salinas was the father.

[6]     On July 22, the State charged Salinas with fifteen counts, and on February 8, 2018, the State amended the information and charged Salinas as follows: seven counts of rape, two as Level 1 felonies, two as Class B felonies, and three as Level 3 felonies (Counts 1-2 and 10-14); two counts of sexual misconduct with a minor, as Class B felonies (Counts 3-4); five counts of criminal confinement, one as a Level 3 felony, one as a Level 5 felony, one as a Level 6 felony, and two as Class D felonies (Counts 5-9); and battery, as a Class A misdemeanor (Count 15). Prior to trial, the State filed a motion in limine to bar evidence of S.M.'s prior sexual conduct, which the trial court granted. During trial, the nurse who had examined S.M. in June 2016 testified, and defense counsel wanted to question her about one of her notes stating that S.M. had had a consensual sexual encounter in April 2016. Outside the presence of the jury, defense counsel questioned the nurse about the note. Defense counsel hoped to elicit testimony that S.M. had told the nurse that she had had consensual sex with Salinas, but the nurse stated that she did not have enough information to answer that question and doubted that the consensual partner was Salinas. The State objected to the line of questioning, and the court sustained the objection.

[7] At the conclusion of trial, the jury found Salinas guilty of all charges but three of the rape charges (Counts 10, 12, and 14). At sentencing, the State informed the court that the two counts of sexual misconduct with a minor, Counts 3 and 4, should be "merged" with the two rape counts covering the same dates, Counts 1 and 2. Tr. Vol. IV at 94. Nonetheless, the trial court entered judgment of conviction as follows: four counts of rape, one as a Level 1 felony, one as a Level 3 felony, and two as Class B felonies; two counts of sexual misconduct with a minor, as Class B felonies; five counts of criminal confinement, one as a Level 3 felony, one as a Level 5 felony, one as a Level 6 felony, and two as Class D felonies; and battery, as a Class A misdemeanor. And the trial court imposed sentence as follows: ten years each for Counts 1 through 4; one and one-half years each for Counts 5 and 6; nine years for Count 7; three years for Count 8; one year for Count 9; thirty years for Count 11; nine years for Count 13; and one year for Count 15. The trial court stated that, "[f]or sentencing purposes, the Court orders Count 3 shall be merged with Count 1, and Count 4 shall be merged with Count 2." Appellant's App. Vol. III at 25. The trial court ordered some of the sentences to run concurrently and some to run consecutively for an aggregate term of fifty-two years executed. This appeal ensued.

# Discussion and Decision

## *Issue One: Rape Shield Rule*

Salinas contends that the trial court abused its discretion when it precluded him from questioning S.M. about her prior sexual conduct. As the Indiana Supreme Court has stated:

> Generally, a trial court's ruling on the admission of evidence is accorded "a great deal of deference" on appeal. *Tynes v. State*, 650 N.E.2d 685, 687 (Ind. 1995). "Because the trial court is best able to weigh the evidence and assess witness credibility, we review its rulings on admissibility for abuse of discretion" and only reverse "if a ruling is 'clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights.'" *Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014) (quoting *Clark v. State*, 994 N.E.2d 252, 260 (Ind.2013)).

*Hall v. State*, 36 N.E.3d 459, 466 (Ind. 2015). But a trial court's interpretation of a Rule of Evidence or a statute presents an issue of law that we review *de novo*. *See Tyler v. State*, 903 N.E.2d 463, 467 n.4 (Ind. 2009).

Indiana Evidence Rule 412, the Rape Shield Rule, incorporates the basic principles of Indiana Code Section 35-37-4-4 (2015), Indiana's Rape Shield Act, and provides in relevant part as follows:

> (a) Prohibited Uses. The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct:
>
>> (1) evidence offered to prove that a victim or witness engaged in other sexual behavior; or

(2) evidence offered to prove a victim's or witness's sexual predisposition.

(b) Exceptions.

(1) Criminal Cases. The court may admit the following evidence in a criminal case:

(A) evidence of specific instances of a victim's or witness's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence;

(B) evidence of specific instances of a victim's or witness's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor; and

(C) evidence whose exclusion would violate the defendant's constitutional rights.

[10] On appeal, Salinas appears to suggest that, under Evidence Rule 412(b)(1)(B), he should have been permitted to question S.M. about her single episode of consensual sex with an unknown partner in approximately April 2016. Salinas maintains that S.M.'s "admitted history was relevant to the elements of consent and confinement" and that he "should have been allowed to question [S.M.] about her admission." Appellant's Br. at 26. However, Salinas did not make

an offer of proof to show that S.M. would have testified that she had had consensual sex with Salinas.

[11] An offer of proof allows the trial and appellate courts to determine the admissibility of the testimony and the potential for prejudice if it is excluded. *Barnett v. State*, 916 N.E.2d 280, 287 (Ind. Ct. App. 2009), *trans. denied*. "'It is well settled that an offer of proof is required to preserve an error in the exclusion of a witness' testimony.'" *Id.* (quoting *Dowdell v. State*, 720 N.E.2d 1146, 1150 (Ind. 1999)). Accordingly, Salinas has waived review of this issue on appeal. *See, e.g.*, *id.*

[12] To the extent Salinas contends that he should have been allowed to question Sharon Livingston, the sexual assault nurse examiner ("SANE"), about S.M.'s history of consensual sex, he did make an offer of proof. But, in the offer of proof, Salinas asked Livingston whether S.M. had told her that she had had consensual sex with Salinas in April 2016. Livingston replied, "I honestly don't think that that is what she—I can't answer that with certainty at all. I really can't." Tr. Vol. III at 13. On redirect examination, Livingston clarified that she "believe[d]" that S.M. had had consensual sex with someone other than Salinas in approximately April 2016. *Id.* at 14. Accordingly, Salinas cannot

show that the trial court abused its discretion when it excluded this line of questioning of Livingston at trial.[1]

[13] Finally, to the extent Salinas contends that exclusion of the evidence of S.M.'s prior sexual history violated his right to confront witnesses under both the state and federal constitutions, which is an exception to the Rape Shield Rule under Evidence Rule 412(b)(1)(C), his contention is, again, without merit. In particular, Salinas asserts that,

> without permitting Salinas to introduce exculpatory evidence—
> that S.M. had engaged in consensual sex during the relevant
> periods charged in the Information—the only reasonable
> inference that the jury could have drawn from the evidence
> presented was that Salinas was the perpetrator in every Count
> and that S.M.'s accusations were true, because reasonable jurors
> would not think it typical that a young teenager was sexually
> active, after undergoing the trauma inflicted by her stepfather.

Appellant's Br. at 33-34. In support of this contention, Salinas cites to this court's opinions in *Davis v. State*, 749 N.E.2d 552 (Ind. Ct. App. 2001), *trans. denied*, and *Steward v. State*, 636 N.E.2d 143 (Ind. Ct. App. 1994), *aff'd*, 652 N.E.2d 490 (Ind. 1995).

---

[1] We note that Salinas asserts that S.M.'s self-reported incident of consensual sex occurred "within the range of Counts 7, 8, 11, and 15." Appellant's Br. at 31. But the offenses underlying Counts 7, 8, and 11 took place in June 2016, and the one instance of consensual sex reported by S.M. occurred two months prior to the June 18, 2016, examination, or in approximately April 2016. Further, the offense underlying Count 15, which occurred between November 16, 2015, and June 1, 2016, was a battery, and Salinas does not explain how S.M.'s consensual sexual activity would be relevant to that offense.

[14]     In *Steward*, we observed that application of the Rape Shield Statute "'complies with the dictates of the Confrontation and Due Process Clauses only if it does not actually impinge upon [the defendant's right to] cross-examination.'" 636 N.E.2d at 148 (quoting *Saylor v. State*, 559 N.E.2d 332, 335. (Ind. Ct. App. 1990)). Thus, the trial court's exclusion of evidence must not prevent the defendant from conducting a full, adequate, and effective cross-examination. *Id.*

[15]     But our holdings in *Davis* and *Steward*, that the trial courts violated the defendants' right to cross-examine witnesses, are inapposite here. In *Steward*, we addressed the risk of mistaken identification of a child molester through "partial corroboration." 636 N.E.2d at 149 (quoting *Saylor*, 559 N.E.2d at 334). "In partial corroboration, once there is evidence that sexual contact did occur, the witness's credibility is automatically 'bolstered.'" *Id.* (quoting *Tague v. Richards*, 3 F.3d 1133, 1138 (7th Cir. 1993)). "This bolstering evidence invites the inference that because the victim was accurate in stating that sexual contact occurred, the victim must be accurate in stating that the defendant was the perpetrator." *Id.* Therefore, in such cases, the defendant must be allowed to rebut this inference by adducing evidence that another person was the perpetrator. *See id.*

[16]     In *Steward*,

> the State introduced expert testimony that [the victim's] behavior was consistent with that of other victims of child sexual abuse syndrome. More importantly, the State produced evidence that

[the victim's] manifestations of child sexual abuse syndrome improved once she reported that Steward had molested her and that a victim of child sexual abuse often improves after identifying the molester.

636 N.E.2d at 149-50. And in *Davis*,

the State commented on L.P.'s prior sexual activity in its opening statement. L.P.'s grandmother testified that the doctor informed her on the night of the examination that L.P. had been sexually active. During the offer of proof, L.P. admitted having sex with another individual sometime in 1996. She acknowledged that this incident occurred before the hospital examination had been performed. Thus, while L.P. accused Davis of having sex with her, the jury was precluded from hearing that L.P. was having sex with others at age twelve. Such exclusion unfairly bolstered her testimony, inasmuch as the inference arises that, because L.P. was accurate in stating that sexual contact had occurred, as disclosed by the physical examination, she also must have been accurate in stating that Davis was the perpetrator of the charged offenses.

749 N.E.2d at 555-56.

[17] In contrast, here, Salinas does not direct us to *any* evidence presented at trial that "unfairly bolstered" S.M.'s testimony. *Id.* He does not contend that the State presented evidence of S.M.'s psychological condition to prove that the rapes had occurred. And, further, S.M. was seventeen years old when she had consensual sex with an unknown person in April 2016. Unlike the victim in *Davis*, who was sexually active at twelve years old, there is nothing unusual about a seventeen-year-old being conversant in details about sexual activity.

Salinas' bare assertion that S.M.'s testimony was bolstered by partial corroboration is entirely unsupported and without merit. We hold that the trial court did not violate Salinas' right to confront witnesses under either the state or federal constitution.

### Issue Two: Double Jeopardy

[18]    Salinas next contends that all but three of his convictions violate his right to be free from double jeopardy under Indiana law. Article 1, Section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." Our Supreme Court has interpreted that clause to prohibit multiple convictions based on the same "actual evidence used to convict." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). To determine the actual evidence used to establish a conviction, we look to the "evidentiary facts" as they relate to "all" of the elements of both offenses. *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002). In other words, the actual evidence test requires "the evidentiary footprint for all the elements required to prove one offense" to be "the same evidentiary footprint as that required to prove all the elements of another offense." *Thrash v. State*, 88 N.E.3d 198, 208 (Ind. Ct. App. 2017) (quoting *Berg v. State*, 45 N.E.3d 506, 510 (Ind. Ct. App. 2015)).

[19]    The Indiana Supreme Court has also "long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy[] but are not governed by the constitutional test set forth in *Richardson*." *Guyton v. State*, 771 N.E.2d 1141, 1143 (Ind. 2002) (quotation marks omitted). One such rule prohibits "[c]onviction and punishment for a

crime which consists of the very same act as another crime for which the defendant has been convicted and punished." *Id.* In *Taylor v. State*, we acknowledged that the "very same act test" is different than the actual evidence test, and we held that the very same act test applies when the defendant's "behavior" underlying one offense is "coextensive with the behavior . . . necessary to establish an element of" another offense. 101 N.E.3d 865, 972 (Ind. Ct. App. 2018).

[20] We first address Salinas' two convictions for sexual misconduct with a minor, as Class B felonies, under Counts 3 and 4. The State concedes that those convictions are "duplicates" of the rape convictions under Counts 1 and 2, in that the exact same acts alleged to constitute two instances of sexual misconduct with a minor were also alleged to constitute two instances of rape. Appellee's Br. at 16; *see Taylor*, 101 N.E.3d 865 at 972. Indeed, in an *attempt* to avoid violating double jeopardy principles, the trial court "merged" the convictions for Counts 3 and 4 with Counts 1 and 2, respectively, "[f]or sentencing purposes." Appellant's App. Vol. II at 25. But it is well settled that, where, as here, a trial court enters judgment of conviction on a guilty verdict, "simply merging the offenses is insufficient [to avoid a double jeopardy violation] and vacation of the offense is required." *Kovats v. State*, 982 N.E.2d 409, 415 (Ind. Ct. App. 2013). Accordingly, we reverse and remand with instructions to vacate Salinas' convictions under Counts 3 and 4 for sexual misconduct with a minor.

[21] Next, Salinas contends that his convictions under Counts 1 and 2 violate double jeopardy because there is no evidence that he raped S.M. during the applicable time period other than one time, on April 7, 2014. But Salinas ignores S.M.'s unequivocal testimony that Salinas raped her on two separate days during the time period of March 1, 2014, to April 30, 2014. Salinas' contention is without merit.

[22] Salinas also suggests that his convictions under Counts 5 and 6, which alleged criminal confinement of S.M. on two occasions between March 1, 2014, and April 30, 2014, violate double jeopardy principles. Salinas avers that "[c]ompelling S.M. to submit 'by force or imminent threat of force' [relevant to his rape convictions for that date range] is the same as Confinement's 'nonconsensual substantial interference with [S.M.]'s liberty.'" Appellant's Br. at 24. But, as the State correctly points out, "[a]ny confinement of a victim beyond that inherent in the force used to effectuate [a] rape constitutes a violation of the confinement statute apart from the violation inherent in the offense of forcible rape." *Parks v. State*, 734 N.E.2d 694, 701 (Ind. Ct. App. 2000), *trans. denied*. S.M. testified that Salinas took her to the apartment in Jasper against her will and kept her there against her will. Because the evidence shows that Salinas confined S.M. beyond that inherent in the force used to rape her, Salinas cannot show a double jeopardy violation on this ground. *See id.* For the same reasons, Salinas' contention that Counts 7 (criminal confinement) and 11 (rape) violate double jeopardy is without merit.

[23] Salinas next contends that his convictions under Counts 11 (rape) and 15 (battery) cannot stand because the battery is a lesser included offense of the rape. However, as the State correctly points out, the evidence shows that the rape in Count 11 occurred on June 2, 2016, and the battery in Count 15 occurred between November 16, 2015, and June 1, 2016. There is no double jeopardy violation.

[24] Finally, Salinas makes a bare contention that his conviction under Count 13 (rape) cannot stand because "[t]here is no evidence in the record supporting a rape during the charged time period [October 1, 2014, and November 15, 2015]." Appellant's Br. at 26. Thus, he asserts, without citation to authority, that "this further subjects [him] to prosecution for other rape allegations that may fall within this range." *Id.* But Salinas ignores S.M.'s testimony that Salinas penetrated her anus with his penis during the relevant date range. Salinas' contention is without merit.

## *Issue Three: Sentence*

[25] Finally, Salinas contends that his sentence is "unreasonable." Appellant's Br. at 34. As the State points out, Salinas sets out the standard of review applicable to an abuse of discretion in sentencing, but he makes no cogent argument in support of an abuse of discretion. Rather, Salinas appears to argue that his sentence is inappropriate under Indiana Appellate Rule 7(B), which provides that "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the

offender." This court has recently held that "[t]he advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed." *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017). And the Indiana Supreme Court has recently explained that:

> The principal role of appellate review should be to attempt to leaven the outliers . . . but not achieve a perceived "correct" result in each case. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Defendant has the burden to persuade us that the sentence imposed by the trial court is inappropriate. [*Anglemyer*, 868 N.E.2d at 494].

*Shoun v. State*, 67 N.E.3d 635, 642 (Ind. 2017) (omission in original).

[26] Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell*, 895 N.E.2d at 1222. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id*. at 1224. The question is not whether another sentence is more appropriate, but rather whether the sentence imposed is inappropriate. *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[27] With respect to the nature of the offenses, Salinas maintains that, "[t]he multiple charges, though heinous, do not allege facts in excess of those necessary to prove the crimes; nor does the evidence contain extraordinary circumstances beyond the number of charges." Appellant's Br. at 41. And with respect to his character, Salinas emphasizes his lack of a criminal history, his religious faith, and his history of "be[ing] good to and with his family." *Id.* at 39.

[28] We cannot say that Salinas' aggregate sentence of fifty-two years executed is inappropriate in light of the nature of the offenses and his character. Salinas, a father-figure to S.M. since she was a small child, brutally raped and/or beat her repeatedly over the course of two years, kidnapped her and left the state, and impregnated her. As for his character, Salinas' gross abuse of his position of trust with S.M., without more, supports his sentence. We decline Salinas' invitation to revise his sentence.

## Conclusion

[29] The trial court did not abuse its discretion or violate Salinas' right to confront witnesses when it prohibited him from questioning either S.M. or Livingston regarding S.M.'s prior sexual history. Two of Salinas' convictions violate the prohibition against double jeopardy, so we remand with instructions to the trial court to vacate his convictions on Counts 3 and 4 for sexual misconduct with a minor. And Salinas' sentence is not inappropriate in light of the nature of the offenses or his character.

Affirmed in part, reversed in part, and remanded with instructions.

Pyle, J., and Altice, J., concur.