Bobby Joe STEWARD, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 65A04–9207–CR–251.

Court of Appeals of Indiana,
First District.

June 14, 1994.

**144** ■ �

Jeffrey L. Lantz, Jon Aarstad, Evansville, for appellant.

1. IND. CODE § 35–42–4–3.

Pamela Carter, Atty. Gen. of Ind., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee.

## STATEMENT OF THE CASE

NAJAM, Judge.

Bobby Joe Steward appeals from his convictions on two counts of Child Molesting,[1] one as a Class C felony and one as a Class D felony. Steward alleges the trial court erred when it (1) denied his motion to correct error which alleged that jurors slept during the trial, (2) allowed several witnesses to testify concerning the acts of molestation for which he was charged, (3) admitted expert testimony on "child sexual abuse syndrome," and (4) pursuant to the Rape Shield Statute, precluded admission of exculpatory evidence offered by Steward.

We affirm in part, reverse in part and remand for a new trial on Steward's conviction for Class C felony child molesting.

## ISSUES

We restate the issues presented for review as follows:

1. Whether the trial court erred in denying Steward's motion to correct error based upon allegations that one or two jurors slept during portions of the trial.

2. Whether the trial court erred in allowing several witnesses to present testimony that the victims had informed them of Steward's acts.

3. Whether the trial court erred in admitting expert testimony regarding "child sexual abuse syndrome."

4. Whether the trial court erred in precluding Steward from presenting exculpatory evidence concerning one victim's accusations of prior molestations by men other than Steward.

## FACTS

The facts most favorable to the verdicts reveal that Steward, a 52 year old police officer in Posey County, Indiana, committed acts of child molesting against S.M. and A.M.

Steward was charged in one information with four counts of child molesting, three counts as Class C felonies and one count as a Class D felony. Steward was also charged in a second information with one count of child molesting as a Class D felony.

The jury found that Steward engaged in sexual intercourse with S.M. between June of 1989 and February of 1990, while she was 15 years of age, and convicted him of one count of Class C felony child molesting. Steward was acquitted of the three remaining counts of child molesting against S.M. In addition, the jury found that during June or July of 1990, Steward touched and fondled S.M.'s 12 year old sister, A.M., on her breasts and vagina and convicted him of Class D felony child molesting. Steward was sentenced to the presumptive term of four years on the first conviction, and to one and one-half years on the second conviction, to run consecutively. Steward appeals from his convictions. We will state additional facts where necessary.

## DISCUSSION AND DECISION

### Issue One: Motion to Correct Error

■ Steward first contends that the trial court erred in not granting him a new trial, pursuant to his motion to correct error, because one or two jurors slept during portions of his trial. Without citation to authority, Steward asks that we presume prejudice and grant him a new trial. The State responds that Steward failed to preserve any error of juror misconduct and, further, that even if he preserved possible error, Steward failed to show prejudice. We agree with the State.

"A party has the duty and responsibility, upon discovery of possible juror misconduct, to formally raise the issue with the presiding court in a timely manner." *Whiting v. State* (1987), Ind., 516 N.E.2d 1067, 1067. "The defendant may not observe an error in the trial, make no objection, and yet claim such error as reason for reversal." *Id.* (quoting *Merry v. State* (1975), 166 Ind.App. 199, 335 N.E.2d .249, *trans. denied*). In *Whiting*, both the Appellant and his attorney were aware of jurors sleeping during trial but failed to bring that information to the trial court's attention. Our supreme court held that because the trial court was not properly apprised of the jurors' behavior and could not take corrective action, the defendant had "relinquished" the right to later assert the issue. *Id.* Similarly, Steward has not properly preserved this issue for our review.

Even if the issue were preserved, Steward has failed to meet his burden of establishing his claim for a new trial. "In order to prevail on an issue of this type it must be demonstrated that the jurors were actually inattentive and that the jurors' action actually resulted in prejudice." *Id.* at 1068. First, Steward failed to demonstrate that any juror was actually inattentive. The evidence presented showed only that one or two jurors had their eyes closed and their heads down, not that they were actually asleep. Thus, the evidence was insufficient to meet the first step of the *Whiting* test.

Steward has also failed to establish actual prejudice even assuming the jurors were asleep. Steward presented witnesses at the hearing on his motion to correct error who alleged to have observed jurors "sleeping." The witnesses' testimony indicates that the jurors slept anywhere from six minutes to 45 minutes at some point during trial. However, as our supreme court held in *Whiting*, "the mere falling asleep for a short time, by a juror, during the argument of counsel for defendant in a criminal cause, does not of itself constitute a sufficient cause for a new trial." *Id.* (quoting *McClary v. State* (1881), 75 Ind. 260). Therefore, we decline Steward's invitation to presume prejudice, decide that he does not meet the second step of the *Whiting* test, and conclude there was no error here.

### Issue Two: Cumulative Testimony

■ Steward also maintains that the trial court erred in allowing cumulative testimony concerning the acts of molestation with which he was charged. Both S.M. and A.M. testified at trial that Steward molested them on various occasions. The State also presented witnesses who testified that the victims had informed them of the molestations. Steward contends that the corroborating witnesses' testimony violated the rule against prior con-

sistent statements. The State responds that Steward failed to object to such testimony and, further, that even if he had objected the trial court did not err in allowing the witnesses' testimony. Again, we must agree with the State.

The failure to object to cumulative testimony constitutes a waiver of that issue on appeal. *Goodwin v. State* (1991), Ind.App., 573 N.E.2d 895, 896. Here, Steward did not raise any objections at trial to alleged repetitive testimony presented by witnesses for the State. Steward has waived review of that issue.

■ However, even assuming that Steward properly preserved the question for review, we conclude there was no error. Steward contends that the jury in the present case heard a "drumbeat repetition" of the victim's testimony and that he was thereby prejudiced. Brief of Appellant at 38. Our supreme court held in *Modesitt v. State* (1991), Ind., 578 N.E.2d 649, that it was error to allow the jury to hear the victim's version of the events, in a "drumbeat repetition," three times before the victim even testified. *Id.* at 654. In the present case, six witnesses, including the victims' parents, older sister and three therapists, testified regarding when, where, and how each learned of the allegations against Steward. The witnesses did not repeat the allegations made by S.M. and A.M., but merely explained the actions and events which took place after they were informed by the victims. That is not the type of testimony which *Modesitt* prohibits and, thus, there was no error.

### Issue Three: Expert Testimony

■ Steward's next allegation of error concerns the admission of expert testimony to show that S.M. exhibited behavior which was consistent with victims of child sexual abuse, evidence which he contends also tainted his conviction for the count involving A.M. Steward asks that we prohibit the use of expert testimony to establish child sexual abuse syndrome because, he contends, such evidence is irrelevant, unreliable and misleading. He points out that both Utah and Pennsylvania have excluded expert testimony concerning child sexual abuse syndrome, as

those states have held that to allow such testimony is tantamount to permitting the expert witness to vouch for the victim's credibility. *See Commonwealth of Pennsylvania v. Dunkle* (1992), 529 Pa. 168, 602 A.2d 830, 836; *State v. Rimmasch* (1989), Utah, 775 P.2d 388, 401. We cannot agree with Steward.

While not allowing experts to testify directly regarding a victim's credibility, Indiana courts have consistently allowed expert testimony concerning whether a particular victim's behavior is consistent with the behavioral patterns of victims of sexual abuse. Like many other jurisdictions, Indiana admits evidence that the victim is suffering from "rape trauma syndrome" for the purpose of proving that the victim was raped. *Simmons v. State* (1987), Ind., 504 N.E.2d 575. *See also Henson v. State* (1989), Ind., 535 N.E.2d 1189; *Wright v. State* (1991), Ind.App., 581 N.E.2d 978; *Jarrett v. State* (1991), Ind.App., 580 N.E.2d 245, *trans. denied; Goodwin v. State* (1991), Ind.App., 573 N.E.2d 895, *trans. denied.* Thus, the notion that a victim's mental condition is probative of a sexual assault is not novel to this state.

Here, the State offered expert testimony to show that S.M. exhibited behavior consistent with other victims of child sexual abuse. First, Dr. Betty Watson, a clinical psychologist, testified that such victims have common traits caused by their abuse, including: problems with peer and family relationships, low self-esteem, guilt and depression, suicidal feelings, and a decline in school performance. Further, Dr. Watson stated that child victims often show improvement after disclosing that such acts have occurred. According to Dr. Watson, S.M. had similar problems and exhibited similar improvement following disclosure of the molestation. Dr. Watson did not testify that she "believed" S.M. or that S.M. was "telling the truth;" rather, Dr. Watson provided expert testimony to assist the jury in understanding the facts. Although Dr. Watson's testimony may be considered an indirect comment on S.M.'s credibility, it "was not [impermissibly] direct testimony as to her credibility." *See Henson,* 535 N.E.2d at 1192–93 (expert testimony that victim's

behavior was consistent with rape trauma syndrome merely tended to show that victim suffered a rape and was not direct opinion of expert that victim was telling the truth). Thus, we conclude it was not error to allow Dr. Watson's testimony.

 In addition, the Executive Director and the caseworker from Open Arms Christian Home, Michael and Katherine Girton, respectively, testified regarding S.M.'s report of Steward's acts of sexual abuse against her. In August of 1990, the Posey Circuit Court had referred S.M. to Open Arms because of behavioral problems she was having at home. During her nearly one year stay, S.M. told the Girtons that Steward had molested her. Michael Girton testified at trial that there was a "marked change" in S.M.'s behavior immediately after disclosing that Steward had molested her, and Katherine Girton testified to the same effect. Record at 1324–25 and 1400–01. In addition, the Girtons both testified that while she was at Open Arms, S.M. was not prone to exaggerate, and had a "very good reputation" for "truthfulness and honesty within the community of Open Arms." Record at 1359 and 1401. Steward asserts that this testimony was impermissible direct testimony by an expert concerning S.M.'s credibility. Again, we disagree.

 The Girtons were not introduced or qualified by the State as expert witnesses but were fact witnesses who testified about the circumstances surrounding S.M.'s disclosure of sexual abuse. We acknowledge that no witness, whether lay or expert, is competent to testify that another witness is or is not telling the truth. *Stewart v. State* (1990), Ind., 555 N.E.2d 121, 125. However, even if the Girtons did impermissibly vouch for S.M.'s testimony, Steward failed to object to their testimony. Steward has waived his challenge to their testimony by failing to object and to ask for a curative measure. *Whitehead v. State* (1987), Ind., 511 N.E.2d 284, 292. Thus, as with Dr. Watson's testimony, the testimony of Michael and Katherine Girton was not improperly admitted by the trial court. We decline Steward's invitation to follow the law of Pennsylvania and

Utah and we conclude there was no error in admitting evidence of child sexual abuse syndrome.

### Issue Four: Victim's Other Accusations of Child Molesting

 Finally, Steward asserts it was fundamental error to prevent admission of exculpatory evidence that at the same time S.M. disclosed acts of molestation by Steward, she made accusations that other individuals had molested her as well. At trial, as discussed in Issue Three, the State presented expert testimony that before S.M. reported acts of sexual abuse by Steward she exhibited behavioral problems common to victims of child sexual abuse and, immediately after reporting such information, that S.M.'s behavior improved. Steward contends that the trial court's failure to allow evidence of other acts of molestation misled the jury to believe that S.M.'s behavioral problems, and subsequent improvement resulting from her disclosure of Steward's acts, were caused solely by her involvement with Steward. The State responds that such evidence was properly excluded by our Rape Shield Statute,[2] pursuant to a pre-trial order in limine.

The Rape Shield Statute, in part, states:

(a) In a prosecution for a sex crime as defined in IC 35–42–4:

(1) Evidence of the victim's past sexual conduct;

\* \* \* \* \* \*

may not be admitted, nor may reference be made to this evidence in the presence of the jury, except as provided in this chapter.

(b) Notwithstanding subsection (a), evidence:

(1) Of the victim's or a witness's past sexual conduct with the defendant;

(2) Which in a specific instance of sexual activity shows that some person other than the defendant committed the act upon which the prosecution is founded; or

2. IND. CODE § 35–37–4–4.

**148** ■

(3) That the victim's pregnancy at the time of trial was not caused by the defendant;

may be introduced if the judge finds, ... that it is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

■ The purpose of the statute is to protect victims of sex crimes from a general inquiry into their sexual history by preventing the introduction of such evidence. *Lewis v. State* (1982), Ind., 440 N.E.2d 1125, 1129, *cert. denied,* (1983), 461 U.S. 915, 103 S.Ct. 1895, 77 L.Ed.2d 284. Evidence of the victim's prior sexual conduct is allowed by the statute only in the three exceptions discussed above in subsection (b). In addition, our courts have fashioned a fourth exception: evidence of prior false accusations made by the victim are admissible if they are either "demonstrably false" or admitted by the victim to be false. *Little v. State* (1980), Ind.App., 413 N.E.2d 639, 643.

Here, Steward does not contend that the excluded evidence falls under any of the four exceptions to the Rape Shield Statute. We agree that the statute's exceptions do not apply. Rather, Steward asserts that the statute has a "chilling effect" on a defendant's exercise of his Sixth Amendment right to cross-examine witnesses. Brief of Appellant at 12. "[O]ne of the fundamental rights of our criminal justice system granted by the United States Constitution and the Indiana Constitution is the right of a defendant to cross-examination." *Pigg v. State* (1992), Ind., 603 N.E.2d 154, 155. In essence, Steward contends that the statute is unconstitutional both on its face and as applied to him.

■ Because Indiana's Rape Shield Statute has repeatedly been held constitutional on its face, Steward's claim that the statute is facially unconstitutional must fail. *Moore v. Duckworth* (1982), 7th Cir., 687 F.2d 1063, 1067. However, "the constitutionality of such a law as applied to preclude particular exculpatory evidence remains subject to examination on a case by case basis." *Tague v. Richards* (1993), 7th Cir., 3 F.3d 1133, 1137 (quoting *Sandoval v. Acevedo* (1993), 7th Cir., 996 F.2d 145, 149). We have held that

application of the Rape Shield Statute "complies with the dictates of the Confrontation and Due Process Clauses only if it does not actually impinge upon [the defendant's right to] cross-examination." *Saylor v. State* (1990), Ind.App., 559 N.E.2d 332, 335. Thus, the trial court's exclusion of evidence must not prevent the defendant from conducting a full, adequate, and effective cross-examination. *See Lagenour v. State* (1978), 268 Ind. 441, 444–45, 376 N.E.2d 475, 478.

Here, the State did not respond to Steward's constitutional challenge on appeal, but merely addressed whether his claim fell within one of the four exceptions to the Rape Shield Statute. Accordingly, Steward must only make a prima facie showing of reversible error. *See Rowold v. State* (1994), Ind. App., 629 N.E.2d 1285, 1286. However, the prima facie error rule is a rule of convenience and we are not compelled to apply that standard but may, in our discretion, decide the case on the merits. *Head v. State* (1994), Ind.App., 632 N.E.2d 749, 750. Therefore, on the facts before us, we must determine whether Steward's Sixth Amendment right to confrontation was violated because he was deprived of a full, adequate, and effective cross-examination.

Steward's contention that his right of cross-examination was violated is based upon the reasoning of both this court in *Saylor* and the Seventh Circuit's recent holding in *Tague.* Those cases found a violation of the defendant's right to cross-examination in the trial court's application of Indiana's Rape Shield Statute to exclude evidence regarding prior molestations of the victims. In *Saylor,* the State introduced testimony by the victim's therapist describing the victim's "behavior which substantiated her [molestation] claim" and also the victim's "learning deficiencies." *Saylor,* 559 N.E.2d at 334. In addition, medical evidence was admitted to demonstrate that the victim's "physical condition was consistent with past vaginal penetration," which we described as "testimony which appeared to corroborate her claim that sexual intercourse occurred with Saylor." *Id.*

Saylor offered to prove that his mentally handicapped stepdaughter, who had a poor concept of time, had been molested at least two years before the defendant met her. Saylor intended to show, as a result of the prior molestation, that the victim had an enlarged vagina and, as a result of the victim's poor concept of time, that her identification of Saylor as the abuser was unreliable. However, Saylor's proffered evidence was excluded by the trial court before his cross-examination of the therapist. We held it was constitutional error to exclude evidence of probative value that the victim had substituted Saylor as the perpetrator of an act of child molesting which may have occurred earlier in her life. *Id.* at 335–36.

Likewise, in *Tague*, after our supreme court had affirmed Tague's conviction for child molesting on direct appeal, the Seventh Circuit held that the defendant's right of cross-examination had been violated by application of the Indiana Rape Shield Statute.[3] In that case, the State introduced expert testimony and physical evidence that the 11 year old victim had an enlarged hymen and a sexually transmitted disease. However, Tague was prevented from presenting evidence that the victim's father had molested her several years earlier. The federal court found that if Tague had been permitted to introduce evidence and cross-examine witnesses concerning the prior molestation, it "would have established another possible source of the condition of A.T.'s [the victim's] hymen." *Tague*, 3 F.3d at 1140. Thus, the defendant was deprived of his right to effective cross-examination because he was not allowed to "ensure that evidence admitted against an accused is reliable and subject to ... rigorous adversarial testing." *Id.* at 1138 (quoting *Maryland v. Craig* (1990), 497 U.S. 836, 846, 110 S.Ct. 3157, 3163, 111 L.Ed.2d 666.

Steward's constitutional claim is even more compelling than the claim asserted by the

defendants in *Saylor* and *Tague*. In those cases, the evidence offered by the State merely tended to prove that sexual contact had occurred, the primary purpose for which it was introduced. However, both cases also discussed the risk of mistaken identification of the perpetrator through "partial corroboration." *Saylor*, 559 N.E.2d at 334; *Tague*, 3 F.3d at 1138. In partial corroboration, once there is evidence that sexual contact did occur, the witness's credibility is automatically "bolstered." *Tague*, 3 F.3d at 1138. This bolstering evidence invites the inference that because the victim was accurate in stating that sexual contact occurred, the victim must be accurate in stating that the defendant was the perpetrator. *Id.; Saylor*, 559 N.E.2d at 334. Therefore, in such cases, the defendant must be allowed to rebut this inference by adducing evidence that another person was the perpetrator. *See id.*

In other words, the risk of partial corroboration arises when the State introduces evidence of the victim's physical or psychological condition to prove that sexual contact occurred and, by implication, that the defendant was the perpetrator. Once admitted, such evidence may be impeached by the introduction through cross-examination of specific evidence which supports a reasonable inference and tends to prove that the conduct of a perpetrator other than the defendant is responsible for the victim's condition which the State has placed at issue. Following *Saylor* and *Tague*, we emphasize that both the necessity for and the constitutional right to such cross-examination are limited to these specific and narrow circumstances and clearly do not permit a general inquiry into the victim's sexual past or allow the defendant to posit hypothetical perpetrators, an inquiry which would violate the Rape Shield Statute.

Here, in order to prove that sexual contact occurred, the State introduced expert testimony that S.M.'s behavior was consistent

---

**3.** The 7th Circuit affirmed the denial of habeas corpus relief but nullified our supreme court's decision in *Tague v. State* (1989), Ind., 539 N.E.2d 480, insofar as the supreme court held the Indiana Rape Shield Statute was not unconstitutional as applied. While the supreme court addressed only whether one of the exceptions to the statute applied, the federal court based its holding on a constitutional analysis under the Sixth Amendment's Confrontation Clause. The 7th Circuit did not grant Tague's petition because the court found the constitutional error was harmless.

with that of other victims of child sexual abuse syndrome. More importantly, the State produced evidence that S.M.'s manifestations of child sexual abuse syndrome *improved* once she reported that *Steward* had molested her and that a victim of child sexual abuse often improves after identifying the molester. This evidence does more than suggest inferentially that Steward caused S.M.'s condition; it is more than partial corroboration. It is evidence offered to prove that it was Steward who molested S.M. As a result of the State's evidence, the suggested inference is that the improvement in S.M.'s behavior was directly attributable to the defendant's absence from her presence. Thus, when the State presented evidence of S.M.'s behavior which actually linked the sexual contact to Steward and supported the inference that Steward was the perpetrator, the State opened the door to Steward's introduction of exculpatory evidence through cross-examination, limited to the scope of direct examination on that issue.

The exculpatory evidence which Steward offered to prove would have shown S.M. reported that four other men had molested her at around the same time that she reported Steward's molestation. This evidence gives rise to three possible inferences: (1) S.M. was molested by several men including Steward; (2) S.M. was molested only by these other men; or (3) S.M. was molested only by Steward. By the exclusion of evidence of other molestations, the jury was given the distinct impression that it was Steward who caused S.M.'s behavioral problems. In turn, Steward was prevented from presenting evidence that the improvement in S.M.'s behavior could have been caused by her reporting the abuse committed by the other men, thus raising an inference that the other men were entirely responsible for S.M.'s behavior.

The record shows that Steward's counsel cross-examined S.M., the Girtons, Dr. Watson, S.M.'s parents and others, regarding S.M.'s behavior before and after she had reported that Steward molested her. However, the trial court's application of the Rape Shield Statute to exclude evidence indicating that "another possible source" of S.M.'s behavior existed, significantly impeded Steward's efforts to rebut the inferences the State asked the jury to draw from the expert testimony. *See Tague*, 3 F.3d at 1138. In other words, the State was allowed to take advantage of the inculpatory conclusion, but Steward was prohibited from placing the exculpatory conclusion before the jury. While we have held that it is permissible to admit evidence of child sexual abuse syndrome to show that sexual contact occurred, *see* Issue Three, the State cannot use the Rape Shield Statute both as a shield and as a sword. It is error to apply a rule "mechanistically to prohibit the defense from either offering its version of the facts or assuring through cross-examination that the trier of fact has a satisfactory basis for evaluating the truth of the witnesses' testimony." *Saylor*, 559 N.E.2d at 335.

Therefore, we hold on these facts that it was constitutional error to exclude evidence of prior molestations through cross-examination and to prohibit Steward from proving that there was another possible explanation for the victim's behavior, which was consistent with that of a victim of child sexual abuse. Steward was denied his Sixth Amendment right of cross-examination.

## CONCLUSION

The trial court did not err in denying Steward's motion to correct error, in allowing several witnesses to present testimony that S.M. and A.M. had informed them of Steward's molestations, or in admitting expert testimony regarding child sexual abuse syndrome. However, because the State offered corroborating evidence which linked Steward to the act of molestation against S.M., the trial court erred when it precluded Steward from presenting exculpatory evidence concerning S.M.'s accusations of prior molestations by men other than Steward, pursuant to the Rape Shield Statute. Because of the exclusion of such evidence, Steward was denied his Sixth Amendment right of cross-examination.

Therefore, we must reverse Steward's conviction for child molesting as a Class C felony and remand for a new trial on the count involving S.M. We affirm Steward's conviction for child molesting as a Class D felony

on the count involving A.M., as Steward was not prevented from offering exculpatory evidence but was given the opportunity for a full, adequate and effective cross-examination regarding A.M.

Affirmed in part, reversed in part and remanded for a new trial.

BAKER and SULLIVAN, JJ., concur.