**Charles W. DAVIS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 21A01–0008–CR–256.**

Court of Appeals of Indiana.

May 2, 2001.

Transfer Denied August 9, 2001.

Thomas M. Thompson, Smith & Thompson Connersville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

BAKER, JUDGE

Appellant-defendant Charles W. Davis appeals his convictions for ten counts of Class A felony Child Molesting.[1] Specifically, Davis asserts that the trial court's exclusion of evidence regarding the victim's past sexual conduct violated his right

___

1. IND. CODE § 35–42–4–3.

to confrontation, and the statements he made following a polygraph examination were erroneously admitted at trial.

*FACTS*

The facts most favorable to the verdict are that in August 1996, twelve-year-old L.P. told her grandmother that she was going to babysit for a neighbor and then spend the rest of the night with a girlfriend. Instead, L.P. stayed out all night with a young boy. After L.P. claimed that she had been raped, a physician conducted an examination. While the doctor indicated that L.P. had not had sex on the night of the alleged rape, it was determined that L.P. had been sexually active on prior occasions.

L.P. subsequently recanted her claim that the boy had raped her, but told a detective who interviewed her that a man wearing a black hat and ski mask was responsible for the assault. L.P. then told Detective Bill Cox of the Connersville Police Department that it was actually Davis, her forty-six-year-old stepfather, who had engaged in sexual intercourse with L.P. on ten different occasions. L.P. told Detective Cox that she recorded the dates on a calendar by marking her initials on it every time Davis had sex with her.

On August 17, 1998, State Police Officer Paul Strittmatter conducted a polygraph examination of Davis regarding L.P.'s claim that he had sexual intercourse with her. Davis signed a stipulation that permitted any admissions or confessions of guilt made during any phase of the examination to be introduced as evidence. Following the examination, Officer Strittmatter informed Davis that his answers to the questions pertaining to L.P. indicated deception. Officer Strittmatter then conducted a post-polygraph interview to per-

mit Davis to explain his answers. During the course of the interview, Davis denied having sexual intercourse with L.P., but admitted that he had fondled L.P.'s vagina. Davis was then charged with ten counts of child molesting. All acts were alleged to have occurred between February 1, 1996 and August 7, 1996.

At a jury trial which commenced on March 28, 2000, the trial court allowed Davis's statement to be admitted into evidence.[2] At trial, the State remarked during its opening statement that L.P. had been taken to the hospital and "was examined and determined that she had at twelve (12) years old been sexually active." Record at 194. This evidence was also introduced at trial. In response, Davis attempted to introduce evidence of L.P.'s sexual activity with persons other than Davis. Specifically, L.P. admitted, during an offer of proof, that she had previously engaged in sexual intercourse with another man sometime in 1996. R. at 230–36. L.P. also admitted that her grandmother's former husband had attempted to have sex with her on at least one occasion. The trial court, however, excluded this evidence, citing Indiana's Rape Shield law.[3] Davis was ultimately convicted on all counts as charged, and he now appeals.

## DISCUSSION AND DECISION

### I. Rape Shield Law Issue

Davis argues that his right to confront witnesses against him was violated because the trial court refused to admit evidence regarding L.P.'s prior sexual conduct. Specifically, Davis contends that such evidence was admissible because the physician's report had been admitted into evidence indicating that L.P. had been sexually active prior to the time that L.P. had been examined by the physician. Thus, Davis argues that he should have been permitted to present evidence of L.P.'s prior sexual activity with an individual other than Davis in order "to complete the picture." Appellant's brief at 12.

To resolve this issue, we first turn to the relevant provisions of the Rape Shield Law, which is embodied in Ind.Evidence Rule 412:

> (a) In a prosecution for a sex crime, evidence of the past sexual conduct of a victim or witness may not be admitted, except:
>
> (1) evidence of the victim's or of a witness's past sexual conduct with the defendant;
>
> (2) evidence which shows that some person other than the defendant committed the act upon which the prosecution is founded.[4]

■ To show a violation of the Confrontation Clause with respect to this issue, our supreme court has determined that the defendant must demonstrate that he was prohibited from engaging in otherwise appropriate cross-examination "designed to show a prototypical form of bias on the part of the witness, and thereby from showing the jury facts from which it could appropriately draw inferences relating to the witness's reliability." *Rubalcada v. State*, 731 N.E.2d 1015, 1021 (Ind.2000). Trial judges are afforded wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on

---

2. The trial court had previously denied Davis's motion to suppress this statement. R. at 297.

3. Ind.Evidence Rule 412; IND. CODE § 35–37–4–4.

4. The trial court cited this rule in sustaining the State's objection regarding the admissibility of this proffered evidence. Our Rape Shield Law is also set forth in I.C. § 35–37–4–4.

cross-examination based on concerns about harassment, prejudice, confusion of the issues, the witness's safety or interrogation that is repetitive or only marginally relevant. *Logan v. State,* 729 N.E.2d 125, 134 (Ind.2000).

▌ We also note that the purpose of the Rape Shield law is to encourage the reporting of sexual assaults and to prevent victims from feeling as though they are on trial for their sexual histories. *Hook v. State,* 705 N.E.2d 219, 221 (Ind.Ct.App. 1999), *trans. denied.* This court will not engraft additional exceptions to the rape shield prohibition against inquiry into the past sexual activities of a victim. *Little v. State,* 650 N.E.2d 343, 345 (Ind.Ct.App. 1995).

▌ Notwithstanding the above, Davis urges that evidence of L.P.'s prior sexual conduct should have been admitted in light of our opinion in *Steward v. State,* 636 N.E.2d 143, 149 (Ind.Ct.App.1994), *affirmed,* 652 N.E.2d 490 (Ind.1995), where we observed that:

> [T]he risk of partial corroboration arises when the State introduces evidence of the victim's physical or psychological condition to prove that sexual contact occurred, and by implication, that the Defendant was the perpetrator. Once admitted, such evidence may be impeached by the introduction through cross-examination of specific evidence which supports a reasonable inference and tends to prove that the conduct of a perpetrator other than the Defendant is responsible for the victim's condition which the State has placed at issue.... [W]e emphasize that both the necessity for and the constitutional right to such cross-examination are limited to these specific and narrow circumstances and clearly do not permit a general inquiry into the victim's sexual past or allow the defendant to posit hypothetical perpe-

trators, an inquiry which would violate the Rape Shield Statute.

In *Steward,* the victim accused four other men, apart from the defendant, of molesting her around the same time that she had made accusations against the defendant. Thus, there was a substantial question as to the identity of the perpetrator. Inasmuch as the State offered evidence that the complaining witness's behavior was consistent with a child who had been molested and also that her behavior improved after she accused the defendant of the molesting, we determined that the jury should also have been informed that the complaining witness accused four others of molesting her around the same time that the defendant had allegedly assaulted her. *Id.* at 150. Thus, we concluded it was error to permit the State to present corroborating evidence linking the defendant to the act of molestation, while precluding the defendant from presenting exculpatory evidence concerning the accusations of prior molestations by men other than the defendant. *Id.*

Here, the State commented on L.P.'s prior sexual activity in its opening statement. L.P.'s grandmother testified that the doctor informed her on the night of the examination that L.P. had been sexually active. During the offer of proof, L.P. admitted having sex with another individual sometime in 1996. She acknowledged that this incident occurred before the hospital examination had been performed. R. at 233–34. Thus, while L.P. accused Davis of having sex with her, the jury was precluded from hearing that L.P. was having sex with others at age twelve. Such exclusion unfairly bolstered her testimony, inasmuch as the inference arises that, because L.P. was accurate in stating that sexual contact had occurred, as disclosed by the physical examination, she also must have been accurate in stating that Davis was the

perpetrator of the charged offenses. This is the type of erroneous inference that we sought to prevent from occurring under our holding in *Steward*. We therefore reject the State's argument that this case differs from the circumstances that were presented in *Steward*. In this case, as well as in *Steward*, it was apparent that there could have been another possible source for the acts of molestation.

Without permitting Davis to introduce such exculpatory evidence, the only reasonable inference that the jury could have drawn from the evidence presented, was that Davis was the perpetrator and that L.P.'s accusations were true, because reasonable jurors would not think it typical that a twelve-year-old was sexually active. Thus, we are compelled to conclude under these circumstances that the trial court abused its discretion in excluding this evidence from the jury. As a result, Davis's convictions may not stand.

### II. Admission of Post–Polygraph Statement

Although Davis's convictions must be reversed for the reasons set forth above, we address Davis's second contention of error, inasmuch as that issue may arise upon retrial. Specifically, he contends that the trial court erred in admitting the statement he made during the post-polygraph interview that he had fondled L.P.'s vagina. Davis goes on to allege that Detective "Strittmatter violated the defendant's Fifth Amendment right against self-incrimination and his Fourteenth Amendment right to due process." Appellant's brief at 8.

We note that the Fifth Amendment to the U.S. Constitution is violated when a person is "compelled in any criminal case to be a witness against himself." This court has held that polygraph exami-

nation results may be admitted into evidence through a stipulation by the parties. *Hovenden v. State*, 721 N.E.2d 1267, 1270 (Ind.Ct.App.1999), *trans. denied*. Moreover, a trial court's decision to admit evidence at trial will not be reversed absent a showing of a manifest abuse of the trial court's discretion resulting in the denial of a fair trial. *Minnick v. State*, 544 N.E.2d 471, 477 (Ind.1989).

Here, the record reveals that Officer Strittmatter informed Davis of his *Miranda*[5] rights in accordance with the polygraph examination procedure. R. at 179. Davis signed an agreement and stipulation to take the polygraph test in order to determine his involvement in the alleged molestation of L.P. Davis agreed to talk to the examiner freely and truthfully as to whether he had engaged in sexual intercourse with L.P. The stipulation also provided that "[I]f during any phase of the examination, the Defendant confesses his guilt, or makes an admission or admissions, or changes his version of previously given statements or testimony, all such statements (oral and/or written) shall be admissible without objection by the Defendant at any trial or hearing." R. at 311.

Officer Strittmatter testified that the post-examination interview is considered a part of a polygraph examination according to the American Polygraph Association. The trial court agreed that the interview was part of the polygraph examination. R. at 191–92. As a part of the process, Officer Strittmatter provided Davis an opportunity to explain the results, and he also informed Davis that he did not have to say anything.

The record demonstrates that Davis's statements were consistent with the stipulation he entered into before taking the examination, and we reject his

5. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct.     1602, 16 L.Ed.2d 694 (1966).

contention that the only reason for the interview "was to elicit an illegal confession." Appellant's brief at 11. Our review of the record persuades us that Officer Strittmatter did no more than politely confront Davis with the information that he had failed the polygraph and ask about his sexual involvement with L.P. Moreover, Davis did not testify at trial, and he was, therefore, not compelled to be a witness against himself. Thus, the trial court did not err in admitting Davis's post-polygraph statements into evidence.

### CONCLUSION

In light of our disposition of the issues set forth above, we conclude, under the circumstances here, that the trial court abused its discretion in excluding evidence that L.P. had sexual relations with an individual other than Davis. We note, however, that although Davis's convictions for child molesting must be reversed, the trial court properly admitted Davis's post-polygraph statements into evidence.

Reversed and remanded for a new trial.

SHARPNACK, C.J., and MATHIAS, J., concur.