## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 30 2020, 9:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cynthia M. Carter
Law Office of Cynthia M. Carter, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill Jr.
Attorney General of Indiana

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Edward Meiggs,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

December 30, 2020

Court of Appeals Case No.
20A-PC-1067

Appeal from the Vanderburgh
Superior Court

The Honorable Robert J. Pigman,
Judge

Trial Court Cause No.
82D03-1902-PC-1034

**Brown, Judge.**

[1] Edward Meiggs appeals the denial of his petition for post-conviction relief. We affirm.

*Facts and Procedural History*

[2] The relevant facts as discussed in Meiggs's direct appeal follow:

> On May 6, 2015, A.W. went to Evansville Metaphysics for an hour-long massage. Shortly after she arrived, Meiggs emerged and directed A.W. to a small room where the massage would take place. In preparation for the massage, A.W. removed all of her clothes except for her underwear.
>
> At the end of the hour, Meiggs asked A.W. if she wanted him to continue because his next client would not arrive for thirty minutes. She agreed, and he began massaging her lower legs. Meiggs touched her vulva over her underwear, then pulled her underwear to the side and inserted his fingers into her vagina. A.W. said "no" and tightened her legs, pushing them together. Tr. Vol. I p. 50. He ignored her, presumably pulled apart her tightened legs, and continued with the assault. He again inserted his fingers into her vagina, and she again said no. Still ignoring her, he placed his tongue on her anus and then inserted his tongue into her vagina. At that point, "she was afraid to resist anymore." *Id.* at 43. A.W. did not fight back "[b]ecause [her] face was down the whole time; [she] didn't know if he had a weapon; . . . [she] knew that [she] couldn't win; [she] knew that there was nothing [she] could do." *Id.* at 59. This behavior continued for ten to fifteen minutes; afterwards, Meiggs whispered in A.W.'s ear "that was nice thank you," and A.W. left the office. *Id.* at 60.
>
> A.W. was "shocked" and "shaken" after the incident and went to a friend's home. *Id.* at 94. A.W. told her friend what had happened and called the police. The responding officer took A.W. to a local hospital for a rape kit examination. The Sexual

Assault Nurse Examiner collected internal and external genital swabs and collected A.W.'s clothing and underwear. The external genital swab contained male DNA; Meiggs could not be excluded as a contributor to that sample. Tr. Vol. II p. 5. Testing was later performed on A.W.'s clothing; Meiggs's DNA was not on the clothing but other unknown male DNA was.

*Meiggs v. State*, No. 82A01-1706-CR-1261, slip op. at 2-3 (December 19, 2017), *trans. denied*.

[3] On May 8, 2015, the State charged Meiggs with three counts of rape as level 3 felonies.[1] *Id.* at 3. At trial, counsel for Meiggs acknowledged Meiggs had given A.W. a massage but denied that he had in any way touched her beneath her underwear, emphasizing to the jury the lack of his DNA on A.W.'s clothing and internal genital swabs. *Id.*

[4] The State intended to introduce into evidence the certificate of lab analysis regarding the DNA testing on A.W.'s clothing, but sought to redact all information regarding the unknown male DNA. *Id.* In part, Meiggs's counsel challenged the redaction and asserted that this was not "a constitutional question," but was an evidentiary question under Ind. Evidence Rule 412(b).[2]

---

[1] Count I alleged that Meiggs penetrated A.W.'s anus with his tongue, Count II alleged that he penetrated her vagina with his tongue, and Count III alleged that he penetrated her vagina with his finger.

[2] At the time of trial, Ind. Evidence Rule 412 provided:

(a) Prohibited Uses. The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct:

(1) evidence offered to prove that a victim or witness engaged in other sexual behavior; or

(2) evidence offered to prove a victim's or witness's sexual predisposition.

Trial Transcript Volume I at 127. The trial court excluded the certificate of lab analysis from evidence altogether but permitted the lab analyst to testify that Meiggs's DNA was not found on A.W.'s clothing. *Meiggs*, slip op. at 3-4. Meiggs wanted to cross-examine the analyst about the unknown male DNA found on the clothing, but the trial court prohibited that line of questioning, finding it irrelevant. *Id.* at 4.

[5]  The State presented the testimony of Nicole Hoffman, a forensic scientist, who stated on direct examination that amylase was detected on two external genital swabs and that amylase is an enzyme, a component of saliva, and is "most concentrated in saliva, but it can be found in lower quantity in other fluids such as urine, blood that kind of stuff." Trial Transcript Volume I at 233. Nicole Keeling, a forensic biologist, testified that she did not find DNA consistent with Meiggs on one of the cuttings from A.W.'s underwear. She also testified that she concluded the Y-STR profile obtained from the combined external genital swabs was consistent with the Y-STR profile obtained from him but one

---

(b) Exceptions.

    (1) Criminal Cases. The court may admit the following evidence in a criminal case:

        (A) evidence of specific instances of a victim's or witness's sexual behavior, if offered to prove that someone other than the defendant was the source of semen, injury, or other physical evidence;

        (B) evidence of specific instances of a victim's or witness's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor; and

        (C) evidence whose exclusion would violate the defendant's constitutional rights.

additional allele was detected, and Meiggs and all his male paternal relatives could not be excluded as potential Y-STR contributors.

[6] The jury found Meiggs guilty of Count II and not guilty of the other two counts, and the court sentenced him to nine years. *Meiggs*, slip op. at 5.

[7] On direct appeal, Meiggs argued that the trial court erroneously excluded the certificate of lab analysis and testimony of the expert witnesses related to the unknown male DNA found on A.W.'s clothing. *Id.* at 5-6. This Court affirmed and held:

> While Meiggs highlights the Rape Shield Rule in his briefs, it is apparent that the trial court did not exclude this evidence on that basis. Instead, the trial court excluded this evidence because it was irrelevant. Tr. p. 127. Indiana Evidence Rule 401 provides that evidence is relevant if it (1) has any tendency to make a fact more or less probable than it would be without the evidence; and (2) the fact is of consequence in determining the action.
>
> Here, the jury heard evidence that Meiggs's DNA was not found on the internal genital swabs or A.W.'s clothing. Indeed, Meiggs's counsel repeatedly emphasized this evidence throughout the trial, as it supported Meiggs's defense that, while he had given A.W. a massage, he had not touched her beneath her underwear. Whether there was unknown male DNA on A.W.'s clothing is wholly irrelevant to the fact that Meiggs's was not. This unknown DNA did not make it any more or less probable that Meiggs had committed the acts with which he was charged and was not of consequence in determining the action. Consequently, the trial court did not err by finding that this evidence was irrelevant and inadmissible.

*Id.* at 5-6 (footnote omitted). We also noted: "Meiggs spends much time arguing about his constitutional right to confront and cross-examine witnesses. He has no constitutional right, however, to cross-examine witnesses about matters that are irrelevant to his guilt or innocence." *Id.* at 6 n.4.

[8] On February 26, 2019, Meiggs, *pro se*, filed a petition for post-conviction relief. On April 9, 2019, Meiggs by counsel filed an amended petition alleging he received ineffective assistance of trial counsel because he did not raise his Sixth Amendment right to present a defense.

[9] On August 23, 2019, the court held a hearing. Attorney Mark Phillips, Meiggs's trial counsel, testified that "we had lengthy discussion both in chambers and the record relating to my desire to have the jury hear about males other than [Meiggs] and the presence of their DNA on some cuttings I think from some shorts that were tested . . . ." Transcript Volume II at 13. Post-conviction counsel referenced *Steward v. State*, 636 N.E.2d 143 (Ind. Ct. App. 1994), *summarily aff'd in part*, 652 N.E.2d 490 (Ind. 1995), and *Davis v. State*, 749 N.E.2d 552 (Ind. Ct. App. 2001), *trans. denied*, and Attorney Phillips stated: "I don't think I raised either of them by name in an argument because those facts are somewhat dissimilar from the allegations here." *Id.* at 24.

[10] On cross-examination, when asked if he made the strategic decision to argue the way he did and leave out cases that were factually different, he answered: "Yeah I mean I – any – any trial I'm in, uh, I'm making strategic decisions every minute." *Id.* at 27. He also stated: "[I]f I didn't reference those cases at

trial and I knew about 'em then I – then I didn't reference 'em because I didn't think they were applicable if I didn't know about 'em or if I didn't remember them by name then I wouldn't have referenced them by name." *Id.*

When asked if he thought it was of some importance to bring out the distinction between amylase being a substance just in saliva versus in various bodily fluids, he answered "looking back, um, maybe that had an influence on the jury" and "[a]t the time I didn't think it was a significant distinction because we alleged that it didn't happen[].  And so because the internal swabs didn't show that presence, um, the – the decision that I made strategically was if – if we contended that something didn't penetrate then we don't get into a distinction about something that's not inside." *Id.*  He also stated:

> [L]ooking back . . . maybe if I'd made that distinction even
> though I don't remember that being discussed . . . in the record, if
> I could have made that distinction maybe that would have made
> a difference then – then obviously I would have done it to help
> [Meiggs].

*Id.* at 28.  When asked if there was also a risk of confusing the jury with these very specific scientific points when the main point was whether something existed in a certain location, he answered:

> [I]t has been my experience with juries that you walk a fine line
> between attesting too much and given [sic] weight to something
> that before you started protesting they didn't even consider it was
> relevant.  So, yeah, I mean that's always an issue and you sort of
> have to make the decision on the fly that you think is best serving
> your client and because I don't recall there being testimony or

evidence of that – of that kind of distinction, um, I didn't – I didn't at that point think it was important. Looking back, you know, maybe it – it – it very well was.

*Id.*

The court denied Meiggs's petition. With respect to Meiggs's assertion that his trial counsel failed to raise a constitutional argument regarding the evidence of unknown male DNA, the court concluded that trial counsel's "strategic decision to focus on the Rape Shield Rule exception, as well as the relevance of the evidence to his defense, was reasonable and, as a result, the Court does not find Phillips was ineffective based upon his decision." Appellant's Appendix Volume II at 133. As for his assertion that trial counsel failed to argue that amylase was not a synonym for saliva but is a substance also found in other bodily fluids, the court found it to be another challenge to the reasonableness of trial counsel's strategy, evidence concerning the alternate sources for the amylase was before the jury, defense counsel "touched on the point that the testing done by state police technicians had not revealed the presence of any of the Defendant's DNA and that what little DNA was found on the exterior genital swabs was not sufficient for testing purposes to identify the Defendant as the source of that DNA," and that "[t]his is a perfectly rational defense given the victim's description of how the assault occurred, including the duration of the assault, and the various places in her body where she alleged the Defendant had touched her." *Id.* at 134.

## *Discussion*

The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Fisher*, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

To prevail on a claim of ineffective assistance of counsel a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), *reh'g denied*). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Id.* To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable

probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001). Failure to satisfy either prong will cause the claim to fail. *French*, 778 N.E.2d at 824. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

[15] When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1072 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. *Clark v. State*, 668 N.E.2d 1206, 1211 (Ind. 1996), *reh'g denied*, *cert. denied*, 520 U.S. 1171, 117 S. Ct. 1438 (1997). "Reasonable strategy is not subject to judicial second guesses." *Burr v. State*, 492 N.E.2d 306, 309 (Ind. 1986). We "will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best." *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998). In order to prevail on a claim of ineffective assistance due to the failure to object, the defendant must show a reasonable probability that the objection would have been sustained if made. *Passwater v. State*, 989 N.E.2d 766, 772 (Ind. 2013).

Meiggs argues that his trial counsel's performance was deficient because he failed to argue the Sixth Amendment required that he be allowed to present evidence of other male DNA on A.W.'s underwear. He asserts a defendant may not be prohibited from "'presenting exculpatory evidence concerning' prior sexual acts allegedly committed against the victim." Appellant's Brief at 14 (quoting *Davis*, 749 N.E.2d at 555). He contends that *Steward* is particularly instructive. He also asserts that "amylase, which the State relied on in closing to argue for Mr. Meiggs' guilt, is a substance found in other bodily fluids besides saliva – a point that Mr. Meiggs' trial counsel neglected to argue or otherwise even elicit from witnesses." *Id.* at 17.

In *Steward*, Bobby Joe Steward appealed convictions of child molesting related to a fifteen-year-old, S.M., and a twelve-year-old. 636 N.E.2d 144-145. On appeal, Steward argued that it was fundamental error to prevent admission of exculpatory evidence that at the same time S.M. disclosed acts of molestation by him, she made accusations that other individuals had molested her as well. *Id.* at 147. We held that Steward's claim that Indiana's Rape Shield Statute was facially unconstitutional failed, but stated that "the constitutionality of such a law as applied to preclude particular exculpatory evidence remains subject to examination on a case by case basis." *Id.* at 148 (quoting *Tague v. Richards*, 3 F.3d 1133, 1137 (7th Cir. 1993) (quoting *Sandoval v. Acevedo*, 996 F.2d 145, 149 (7th Cir. 1993), *cert. denied*, 510 U.S. 916, 114 S. Ct. 307 (1993))). We also stated that "application of the Rape Shield Statute 'complies with the dictates of the Confrontation and Due Process Clauses only if it does not actually impinge

upon [the defendant's right to] cross-examination.'" *Id.* (quoting *Saylor v. State*, 559 N.E.2d 332, 335 (Ind. Ct. App. 1990), *trans. denied*).

[18]    The Court discussed *Saylor* and *Tague*, both cases which addressed child molesting. *Id.* at 148-149. The Court held:

> Steward's constitutional claim is even more compelling than the claim asserted by the defendants in *Saylor* and *Tague*. In those cases, the evidence offered by the State merely tended to prove that sexual contact had occurred, the primary purpose for which it was introduced. However, both cases also discussed the risk of mistaken identification of the perpetrator through "partial corroboration." *Saylor*, 559 N.E.2d at 334; *Tague*, 3 F.3d at 1138. In partial corroboration, once there is evidence that sexual contact did occur, the witness's credibility is automatically "bolstered." *Tague*, 3 F.3d at 1138. This bolstering evidence invites the inference that because the victim was accurate in stating that sexual contact occurred, the victim must be accurate in stating that the defendant was the perpetrator. *Id.*; *Saylor*, 559 N.E.2d at 334. Therefore, in such cases, the defendant must be allowed to rebut this inference by adducing evidence that another person was the perpetrator. *See id.*
>
> In other words, the risk of partial corroboration arises when the State introduces evidence of the victim's physical or psychological condition to prove that sexual contact occurred and, by implication, that the defendant was the perpetrator. Once admitted, such evidence may be impeached by the introduction through cross-examination of specific evidence which supports a reasonable inference and tends to prove that the conduct of a perpetrator other than the defendant is responsible for the victim's condition which the State has placed at issue. Following *Saylor* and *Tague*, we emphasize that both the necessity for and the constitutional right to such cross-examination are limited to these specific and narrow

circumstances and clearly do not permit a general inquiry into the victim's sexual past or allow the defendant to posit hypothetical perpetrators, an inquiry which would violate the Rape Shield Statute.

*Id.* at 149. The Court concluded that it was constitutional error to exclude evidence of prior molestations through cross-examination and to prohibit Steward from proving that there was another possible explanation for the victim's behavior, which was consistent with that of a victim of child sexual abuse, and that he was denied his Sixth Amendment right of cross-examination. *Id.* at 150.

[19] In *Davis*, Charles Davis appealed his convictions for molesting L.P., his twelve-year-old stepdaughter. 749 N.E.2d at 553. On appeal, he argued that his right to confront witnesses against him was violated because the trial court refused to admit evidence regarding L.P.'s prior sexual conduct. *Id.* at 554. Specifically, he argued that such evidence was admissible because a physician's report had been admitted into evidence indicating that L.P. had been sexually active prior to the time that L.P. had been examined by the physician. *Id.* He also contended that he should have been able to present evidence of L.P.'s prior sexual activity with an individual other than him in order to "complete the picture." *Id.* The Court held that "[t]rial judges are afforded wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on cross-examination based on concerns about harassment, prejudice, confusion of the issues, the witness's safety or interrogation that is repetitive or only marginally relevant." *Id.* at 554-555 (citing *Logan v. State*, 729 N.E.2d 125, 134

(Ind. 2000)). The Court cited *Steward* and concluded that "[w]ithout permitting Davis to introduce such exculpatory evidence, the only reasonable inference that the jury could have drawn from the evidence presented, was that Davis was the perpetrator and that L.P.'s accusations were true, because reasonable jurors would not think it typical that a twelve-year-old was sexually active." *Id.* at 556.

[20]    Unlike *Steward* and *Davis*, which involved children, A.W. testified at trial in April 2017 that she was twenty-five years old indicating she was in her early twenties in May 2015 when the offense occurred. Meiggs does not point to authority showing that the rationale in *Steward* and *Davis* has been extended beyond cases involving child molesting. Meiggs also does not assert that identity was at issue. Further, Meiggs's trial counsel testified that he did not raise *Steward* or *Davis* by name because those facts were dissimilar from the allegations and indicated it was a strategic decision. And, as noted by the post-conviction court, this Court previously held that "[w]hether there was unknown male DNA on A.W.'s clothing is wholly irrelevant to the fact that Meiggs's was not" and noted that Meiggs "has no constitutional right . . . to cross-examine witnesses about matters that are irrelevant to his guilt or innocence." *Meiggs*, slip op. at 6, 6 n.4.

[21]    With respect to Meiggs's argument that his trial counsel failed to argue or elicit testimony that amylase is found in other bodily fluids besides saliva, we note that such evidence was before the jury. Hoffman, the forensic scientist, testified on direct examination that amylase was detected on two external genital swabs

and that amylase is an enzyme, a component of saliva, and that it is "most concentrated in saliva, but it can be found in lower quantity in other fluids such as urine, blood that kind of stuff." Trial Transcript Volume I at 233. When asked if he thought it was of some importance to bring out the distinction between amylase being a substance just in saliva versus in various bodily fluids, Meiggs's trial counsel answered "[a]t the time I didn't think it was a significant distinction because we alleged that it didn't happen[]. And so because the internal swabs didn't show that presence, um, the – the decision that I made strategically was if – if we contended that something didn't penetrate then we don't get into a distinction about something that's not inside." Transcript Volume II at 27. The post-conviction court found Meiggs's assertion that his trial counsel failed to argue that amylase was not a synonym for saliva but is a substance also found in other bodily fluids was merely a challenge to the reasonableness of trial counsel's strategy and that trial counsel provided a perfectly rational defense. We cannot say that the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the trial court.

[22] For the foregoing reasons, we affirm the denial of Meiggs's petition for post-conviction relief.

[23] Affirmed.

Vaidik, J., and Pyle, J., concur.